321 F.2d 269
 The OKLAHOMA HIGH SCHOOL ATHLETIC ASSOCIATION of the State
of Oklahoma, whose Board of Control now consists of Carl L.
McCafferty, Willie G. Smith, John Daugherty, Dale A. Hughey,
Joe Metcalf and Lee K. Anderson, Appellants,
v.
Charles BRAY, who sues by and through Jess Prince, his
great-grandfather, as next friend, the Board of Education of
Pauls Valley, Oklahoma, and Nathan Stufflebean, Roy McGee,
Dr. John Moore, Chauncey Densmore and W. D. Hart, members of
the Pauls Valley, Oklahoma Board of Education, and the Pauls
Valley High School, Appellees.
 No. 7231.
 United States Court of Appeals Tenth Circuit.
 Aug. 12, 1963.
 
 Claude Monnet, Oklahoma City, Okl. (R. A. Belisle and Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., of counsel, with him on the brief) for appellants.
 C. H. Bowie and W. D. Hart, Pauls Valley, Okl., for appellees.
 Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 This action was initiated by plaintiff Charles Bray, a seventeen-year old senior student at Pauls Valley High School, Pauls Valley, Oklahoma, to seek redress for an alleged violation of his civil rights recognizable under 42 U.S.C.A. 1981, 1983. Named as defendants were the Board of Education of Pauls Valley, its members, the Superintendent of Public Schools of Pauls Valley, and the principal and football coach at Pauls Valley High School. Plaintiff alleged that defendants were wrongfully depriving him of the right to play competitive football because of an order of the Board of Control of the Oklahoma High School Athletic Association. This Association was made a party defendant upon order of the trial court and is present appellant. The appeal is taken from an order of the trial court permanently enjoining the Association from taking any disciplinary action against the Pauls Valley High School for recruiting. This somewhat remarkable extension from the original claim of plaintiff that he had been denied his civil rights appears from the record (like Topsy) to have 'just growed.'
 
 
 2
 The Oklahoma High School Athletic Association is a voluntary association of 610 public high schools in Oklahoma formed for the general purpose of regulating competitive athletics among the secondary schools in that state. Its framework is founded upon a constitution and rules adopted by its members and similarly subject to change. The governing body is designated as a Board of Control consisting of six members. One member is selected from each of four districts within the state, one is selected at large, and the sixth member is the chief executive officer of the Association, an appointed Commissioner who has no vote on matters of student or school discipline. The Association has been existent for more than fifty years and Pauls Valley High School has been a member thereof for more than thirty-five years.
 
 
 3
 In August of 1961 the principal of Pauls Valley High School made inquiry by letter to the Commissioner relative to the eligibility of plaintiff Bray to participate in inter-school competitive football during the approaching season. The letter stated that Bray and his mother, who was living apart from his father, had moved to Kansas City the year before but that both were returning to Pauls Valley. The Commissioner replied that Bray would be eligible to play football under the Association residence rule. Later correspondence from the principal of Pauls Valley indicated a change of circumstance: The mother was not returning to Pauls Valley and Bray had played football and basketball at Lincoln High in kansas City. The Commissioner then indicated that in his opinion Bray would not be eligible to participate[1] and that the matter would be presented to the Board of Control for determination. This was done with Pauls Valley appearing at the hearing and urging that Bray be ruled eligible under the hardship section of the Association rule. The Board of Control determined that Bray would not be eligible to play at Pauls Valley during the then current year. Four days later this action was filed by Bray in the Western District of Oklahoma.
 
 
 4
 The essence of Bray's complaint is that the playing of competitive football is an integral part of the educational system in the secondary school system of Oklahoma; that he has been denied the right to participate in such program; and that defendants in so denying him are acting under the color of the laws of Oklahoma. He also alleged, in support of his plea for a temporary injunction, that he had a right to a college education and that unless he was allowed to exhibit his prowess at football during his senior year at high school he would not be able to obtain an athletic scholarship and would not be able to attend college. The trial judge granted a temporary injunction which allowed Bray to play football at Pauls Valley until further order of the court.
 
 
 5
 An immediate hearing was held to determine whether a permanent restraining order should issue. Counsel stipulated to certain facts and to the admissibility of a number of exhibits and the trial court heard the testimony of plaintiff and the Kansas City football coach. During the course of the hearing numerous conferences were held between court and counsel at which the trial court, although ruling he had jurisdiction of the case, indicated that a happy solution to the controversy did not lie in judicial decree and strongly urged that the Athletic Board either reconsider its denial of Bray's assertion of hardship or that Bray withdraw his suit and return to Kansas City for his senior year of football. The parties agreed to a dismissal of the suit without prejudice and an order was so entered and the temporary restraining order was dissolved on November 2, 1961.[2]
 
 
 6
 On February 23, 1962, the Board of Education of Pauls Valley, a defendant in the case, filed a motion to have the order of dismissal set aside. The motion asserted that subsequent to the entering of such order the Board of Control had suspended Pauls Valley High School from inter-school athletic competition as a result of the Bray incident; that such action was in violation of the tacit agreement of the parties that had premised the dismissal of the action and was motivated by a desire upon the part of the Board that 'its high and mighty rules and orders had to be respected and obeyed regardless of the unfairness and unjustness thereof.' The Board responded to the motion, denying the existence of any agreement not appearing in the record and alleging that Pauls Valley High School had been suspended for recruiting, after a full hearing and in accord with the constitution and rules of the Association. The trial court, without a hearing, reinstated the case and permanently enjoined the Board from enforcing its action against the High School.
 
 
 7
 It is obvious that lapse of time has now prevented effective judicial consideration of plaintiff Bray's claim relative to a right to play football during his senior year at Pauls Valley. He did not play. And the order of the Board of Control suspending Pauls Valley from competition during the year 1962 is similarly affected by time. Pauls Valley, under shelter of court order, did participate in regular inter-school competition. However, public interest in the case and in the subject matter remains high; the problems presented are recurring; the jurisdiction asserted by the trial court is continuing; and the rights of the parties are still in issue. In such posture the appeal is not moot, Howard v. Wilbur, 6 Cir., 166 F.2d 884; Jackson v. Denver Producing & Refining Company, 10 Cir., 96 F.2d 457, and we consider each of appellant's contentions: that the trial court lacked original jurisdiction of the plaintiff Bray's action; that the trial court lacked jurisdiction to enter the particular order appealed from; and that the trial court erred in summarily entering such an order without a hearing.
 
 
 8
 We do not agree with appellant that the Civil Rights Act is not open as a channel of relief for a high school student whose civil rights have been abused by the Board of Control of the Athletic Association. Although the Association is a creature of contract rather than legislative action, it is a composite of public schools governed by a Board of Control who are public employees and are acting in such capacity. An exception lies in the Commissioner but his salary and the other expenses of the Association are paid from revenues which would otherwise be public school revenue (a percentage of the gate receipts from high school divisional meets and tournaments.) The rules of the Association are made by contract, but, once made, ring with authority and are enforced as against an individual in the name of the public interest, under color of the laws of the State of Oklahoma, and consequently well within the compulsion of 42 U.S.C.A. 1983. In a proper case,[3] an individual may seek redress against the members of the Board of Control and we hold that the trial court had original jurisdiction to explore the question of its ultimate jurisdiction under 42 U.S.C.A. 1983.
 
 
 9
 However the potential jurisdiction of the Civil Rights Act cannot be used as sham for a review of the acts of the Board of Control which do not involve a civil right. In the case at bar, once the pleadings were pierced at pretrial, it became apparent that Bray's grievance with the Athletic Association lay only with the application of its residence rule, the Board's refusal to grant an exception for hardship, and a general attack upon the amount of power delegated by the high schools to the Association. Such complaints are not within federal cognizance, are not subject to review in federal court, and, indeed, are not subject to review in the state courts of Oklahoma.[4] Had this case not been voluntarily dismissed by plaintiff it would have been the duty of the trial court, upon the present record, to have dismissed it for lack of a federal question.
 
 
 10
 The present controversy between the Board of Education of Pauls Valley and the Oklahoma High School Association has not the slightest overtone of a federal question. The plaintiff Bray makes no claim relative to whether or not his former high school violated the Association rules relating to recruiting. It is not his controversy and arose after he had abandoned his original claim. And certain it is that the original jurisdiction of a federal court to explore its ultimate jurisdiction under the Civil Rights Act cannot be the premise for the summary disposition of a disputed issue between co-defendants which involves no question of civil rights and over which there is no federal jurisdiction.
 
 
 11
 The case is remanded with instructions to vacate the restraining order against appellant and to vacate the order reinstating the case.
 
 
 
 [1]
 The Commissioner was interpreting Rule 8 of the Association which provides:
 'Rule 8-- Residence and Migration. A student is eligible in the school of the district where the parents are bona fide residents, * * * subject to the following provisions:
 '(e) A student who participates in athletics at any school other than the public high school of the district where the parents reside, his home high school by selection under the provisions of paragraphs (a) or (b), a Government Indian Service School of Oklahoma, the Oklahoma School for the Deaf, the Oklahoma School for the Blind or the High School Department of the Oklahoma Military Academy, forfeits his eligibility at all member schools of the Association. A student who participates at a public high school forfeits his eligibility at all other public high school members of the Association.
 'Interpretation: In case a student becomes an orphan or the parents separate, he will select his home high school for athletic purposes at the school where he first participates; provided, that if he continues in his present school he will not be considered as having made his selection until he participates during the next semester.
 '(g) Any student, after attending one year and completing two semesters of work in a high school and fulfilling all other requirements, becomes eligible.
 '(k) The Board of Control is authorized to grant exceptions to the provisions of this rule and reinstate a student to eligibility when it finds the rule fails to accomplish the purpose for which it is intended, or when the rule works an undue hardship on the student.'
 
 
 [2]
 However, plaintiff Bray did not return to Kansas City and did not play football anywhere
 
 
 [3]
 For example, had Bray, a Negro, been ruled ineligible because of his color it would patently be a violation of civil rights. No such contention is here made. High school football is fully integrated in Oklahoma
 
 
 [4]
 The Supreme Court of Oklahoma states it thus in Morrison v. Roberts, 183 Okl. 359, 82 P.2d 1023:
 'It is a matter of common knowledge that in various athletic organizations, and in various athletic contests, certain officials are clothed with final authority to construe rules and enforce penalties, and to suspend players from the game in progress, or for a definite period of time, or to forfeit the game or the match to one participant or the other. Frequently such rule enforcements work more or less grievous injury to one directly affected thereby, without in any sense giving him a right to correct or change the result by court action such as this. The courts generally should leave the final authority in the athletic official or board, with whom that authority is placed by those who had authority to make the rules and authorize the method of application and enforcement.
 'The plaintiff has many rights as a citizen and as a high school student, but he has no vested right in 'eligibility' as dealt with at such great length in the rules of the Oklahoma High School Athletic Association. The defendant Board of Control was clothed with ample authority to so construe, apply and enforce this rule, with its pecific provision for 'ineligibility' for one year.' 82 P.2d at 1025.