**Lonnie J. SHELTON, Plaintiff-Appellee,**

**v.**

**The NATIONAL COLLEGIATE ATHLET-IC ASSOCIATION, an association, et al., Defendants-Appellants.**

**No. 75–3578.**

United States Court of Appeals, Ninth Circuit.

Feb. 23, 1976.

---

Allan Hart (argued), Lindsay, Nahstoll, Hart & Krause, Portland, Or., for defendants-appellants.

Bruce B. Samson (argued), Portland, Or., for plaintiff-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and McGOVERN,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The principal issue in this appeal[1] is whether the NCAA rule declaring ineligible

---

* Honorable Walter T. McGovern, United States District Judge for the Western District of Washington, sitting by designation.

1. Following oral argument of this cause and a conference of the judges of the panel on February 20, 1976, the court announced from the bench its judgment reversing the district court's grant of a preliminary injunction. At that time we indicated that a formal opinion setting forth some salient facts and the court's reasoning would follow.

for intercollegiate athletics in a particular sport any student who has ever signed a contract to play that professional sport violates the equal protection clause of the constitution.

The basic facts are not in dispute. The NCAA constitution declares as one of its goals the promotion and preservation of amateurism in college athletics. In order to advance this goal, the NCAA constitution contains a rule which distinguishes between amateur and professional athletes on the basis of whether an individual has signed a contract to play professional sports. The rule provides that a student who has signed such a contract, regardless of its enforceability, is ineligible to participate in intercollegiate athletics in that sport.

Appellee Shelton does not deny that he signed a professional contract with an American Basketball Association team which resulted in his being declared ineligible by Oregon State University. Indeed, he contends that the contract is unenforceable because he was induced to sign it by fraud and undue influence. The legal enforceability of the contract is the subject of a separate action brought by Shelton against the professional team which is now pending before the district court. Shelton urges that the NCAA rule making him ineligible despite the alleged defects in the contract creates an impermissible classification in violation of the Equal Protection Clause. He wants the rule suspended while his litigation and the college basketball season continue.

■ Our review on such questions is limited. None of the parties contend that the NCAA rule infringes upon a fundamental right which would necessitate strict judicial scrutiny. Instead, we must examine the rule to determine whether it rationally furthers some legitimate purpose. If it does, then our review is complete.

The rule purports to promote and protect amateurism in intercollegiate athletics. None of the parties seriously contends that this goal is illegitimate. Instead they dispute the means chosen by the NCAA to achieve it.

Shelton believes that it is unreasonable to treat as a professional one who alleges that the contract which he signed is unenforceable. In effect, he contends that the NCAA rule is overinclusive because if he is successful in his other action and the contract is declared unenforceable he is not nor would he ever have been a professional.

In a similar case, two years ago, *Associated Students, Inc. v. NCAA*, 493 F.2d 1251 (9th Cir. 1974), this court reviewed another NCAA eligibility rule which was challenged on equal protection grounds. We recognized that the application of such rules may produce unreasonable results in certain situations. Nonetheless, we found that the rule did not violate the equal protection clause. Moreover, we did so although we recognized that the rule and its enforcement provisions might not be the best means for achieving the desired goal. It is not judicial business to tell a voluntary athletic association how best to formulate or enforce its rules.

■ We believe that the present appeal is controlled by *Associated Students*. The general rule under which Shelton was declared ineligible may from time to time produce unfortunate results. If an individual were subsequently successful in gaining a legal declaration that a professional contract was in fact void from its inception, a ruling that he was ineligible in the interim between his signing and the court's judgment might cause hardship. But, the potential hardship does not make the rule irrational or unrelated to its goal. Moreover, hardship could be avoided by not signing a pro-contract. Reliance on a signed contract as an indication that a student's amateur status has been compromised is rationally related to the goal of preserving amateurism in intercollegiate athletics.

While our function is to determine only if the NCAA has selected a method of protecting amateurism which is reasonably related to that goal, an examination of the alternatives suggested by Shelton supports the conclusion that the rule in question withstands an equal protection challenge.

Shelton argues that the rule should allow for cases such as his own where alleged defects in formation of the contract render it a nullity. The NCAA and its member institutions cannot simply take an athlete's word that his signed contract is void. An eligibility rule limited to contracts that would withstand a court test would be no rule at all. One could sign a contract, then allege that it was unenforceable and participate at will in college athletics while maintaining an option to enter the professional ranks at any time. Clearly, this would obliterate any remaining distinctions between amateur and professional athletes.

The alternative would be extremely burdensome. In the context of this appeal, for instance, the NCAA and its member institutions would be placed in the position of having to predict the outcome of Shelton's action against the professional basketball team. In order to do so they would likely have to undertake extensive investigations of the facts and time consuming hearings involving the parties. Even then, they would have no assurance that their decision would be compatible with the ultimate determination of the courts.

We hold that an effort to avoid this tangled set of affairs through the use of an easily applied and generally reliable criterion is rationally related to a legitimate purpose and does not therefore, violate the equal protection clause.

Finally, we note that this is an appeal from the grant of a preliminary injunction. Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted. In our opinion there is no showing of probable success on the merits in this action. We express no view of the merits in Shelton's other lawsuit.

The order granting the preliminary injunction is reversed. The clerk shall issue the mandate forthwith. No petition for rehearing will be entertained.