**John Irvan Moritzky CHOATE, Plaintiff,**

v.

**UNITED STATES of America et al., Defendants.**

**No. 75-C-513-C.**

United States District Court,
N. D. Oklahoma.

Feb. 26, 1976.

John Irvan Moritzky Choate, pro se.

William W. Choate, Oklahoma City, Okl., for plaintiff.

Burck Bailey, James D. Fellers, Oklahoma City, Okl., for NCAA.

Thomas Thornbrugh, Fred S. Nelson, Tulsa, Okl., for ABC.

Larry D. Derryberry, Paul C. Duncan, Oklahoma City, Okl., for State of Oklahoma.

Robert P. Santee and Nathan G. Graham, Tulsa, Okl., Ashton Hardy, Gen. Counsel, Barbara B. O'Malley, John P. Greenspan, Fed. Communications Commission, Washington, D. C., for FCC.

## ORDER

COOK, District Judge.

The Court has before it for consideration Motions to Dismiss filed by the United States of America, the National Collegiate Athletic Association, the State of Oklahoma, and the American Broadcasting Companies, Inc. After a thorough examination of the briefs filed in regard to said motions and the law applicable thereto, the Court makes the following determination.

Plaintiff filed his Complaint in this action seeking a Declaratory Judgment on November 7, 1975. In addition, plaintiff filed an "Application for Restraining Order" that sought to compel the television broadcasting of the Oklahoma-Nebraska football game which was played November 22, 1975. On November 17, 1975, this Court issued its Order denying the "Application." Plaintiff then filed "Application" in the United States Court of Appeals for the Tenth Circuit. The Circuit Court denied the "Application" by its Order dated November 21, 1975. Plaintiff originally filed his Complaint *pro se.* An attorney, William W. Choate, has since made an appearance of record on behalf of plaintiff, but plaintiff's brief in opposition to the Motions to Dismiss was again, apparently, filed *pro se.*

The defendants, by way of briefs submitted in support of their respective Motions to Dismiss, state that the "petition" as filed is not in compliance with Rule 8 of the Federal Rules of Civil Procedure, does not give fair notice of plaintiff's claim nor legal theory, and should, therefore, be dismissed. The Court certainly recognizes the inadequacies of the Complaint.

Rule 8(a), Federal Rules of Civil Procedure, provides in pertinent part:

"*Claims for relief.* A pleading which sets forth the claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief. . . "

The Court notes, at the outset, that the Complaint is entitled "Petition" contrary to the provisions of Rule 7, Federal Rules of Civil Procedure. Similarly the parties are erroneously referred to as "Petitioner" and "Respondents." The body of the Complaint consists of fourteen pages of facts, legal theories, case citations, citations to newspaper and magazine articles, arguments, and asides, along with twenty-two pages of attachments consisting of personal correspondence and the newspaper and magazine articles referred to in the Complaint.

Rule 10(b), Federal Rules of Civil Procedure provides:

"*Paragraphs; Separate Statements.* All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth."

The Complaint at bar consists of twenty-nine consecutively numbered paragraphs. The Court recognizes the difficult burden defendants face in attempting to draft an Answer in which the allegations of the Complaint are either admitted or denied, in light of the failure of plaintiff to limit each paragraph to a statement of a single set of facts.

Further, the Court notes that plaintiff cites 28 U.S.C. § 1400(b) in support of venue. This statute in fact deals with patent infringement. Plaintiff cites 28 U.S.C. § 1346(a)(2) as a basis of jurisdiction of the Federal Communications Commission and the National Collegiate Athletic Association. Title 28 U.S.C. § 1346(a)(2) provides that the district courts shall have original jurisdiction of "any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department." Not only is the National Collegiate Athletic Association (NCAA) not synonymous with the United States within the meaning of the statute, but plaintiff states in paragraph 3 of the Complaint: "The actual amount of monetary damages that have been sustained is in excess of $10,000" in an attempt to allege 28 U.S.C. § 1332 as an alternative basis for jurisdiction. To be precise, paragraph 2 of the Complaint alleges a jurisdictional basis and paragraphs 3, 4, 5, and 6 each allege some alternative jurisdictional basis.

While in the Complaint the plaintiff "discusses" jurisdiction over the FCC and appears to make allegations in regard to this Commission, the FCC is not named as a party in the caption to the pleadings pursuant to Rule 10(a), Federal Rules of Civil Procedure.

The Complaint filed herein puts an unjustifiable burden upon the Court and the defendants to determine whether somewhere, "tucked" betwixt plaintiff's arguments, conclusions and general dissertations, facts sufficient to support a cause of action have been stated over which this Court has subject matter jurisdiction and also jurisdiction over the parties. It would certainly not be inappropriate for the Court to dismiss the Complaint as being violative of Rule 8. *Shakespeare v. Wilson,* 40 F.R.D. 500 (S.C.Cal.1966); *Vance v. American Society of Composers, Authors and Publishers,* 271 F.2d 204 (8th Cir. 1959), cert. denied, 361 U.S. 933, 80 S.Ct. 373, 4 L.Ed.2d 355 (1960); *Agnew v. Moody,* 330 F.2d 868 (9th Cir. 1964), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964). However, extensive time and effort has

been expended by the parties and the Court in regard to the allegations made, and the allegations of the Complaint will therefore be considered in order to put an end to further litigation in this matter.

■ The Declaratory Judgment Act is not a grant of jurisdiction to the federal courts. It merely makes available an additional remedy in cases of which they have jurisdiction by virtue of diversity and the requisite amount in controversy, or because of a federal question. C. A. Wright, Law of Federal Courts 449 (2d ed. 1970). Plaintiff is a resident and citizen of the State of Oklahoma. One of the defendants is the State of Oklahoma. Therefore, the jurisdictional requirements of 28 U.S.C. § 1332 are not met. Furthermore, although plaintiff makes the general allegation that the actual amount of monetary damages he has sustained exceeds $10,000.00, no facts are pleaded to support the amount of this allegation, and it appears frivolous. The Court must therefore determine whether petitioner has raised a federal question.

In his brief, plaintiff states:

"This action is in the form of a petition for declaratory judgment, and in procedure arose from a request for an investigation by a United States Commission into the use of access to television to ensure member compliance with the rules of an association. Because this request was denied, the Petitioner is appealing the decision to the Court for review."

On August 5, 1975, prior to the filing of this suit, plaintiff wrote to the Federal Communications Commission requesting that it make an "appropriate ruling in 'the public's behalf'" to preclude defendant NCAA from enforcing its policy of preventing the appearance on television of member schools on probation. By letter dated September 12, 1975, the Commission's Broadcast Bureau informed plaintiff it lacked jurisdiction to act upon the matter. Plaintiff did not seek review by the full Commission of the staff letter pursuant to 47 C.F.R. § 1.115. Rather, the plaintiff wrote a letter dated October 15, 1975, thanking the Commission for its consideration of the matter, and filed this suit on November 7, 1975.

■ Any judicial proceeding to review an action of the Federal Communications Commission must be conducted pursuant to 47 U.S.C. § 402. See also the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353. Subsection (a) of 47 U.S.C. § 402 requires that appeals be filed in one of the Circuit Courts of Appeals of the United States unless it involves a licensing procedure. Plaintiff has failed to exhaust his administrative remedies and there is, in actuality, no final decision to review in this case; but even if there were, this Court is not the proper forum. *Mary Elizabeth Maguire v. Post Newsweek Stations,* 24 R.R.2d 2094 (D.C.Cir.1974).

■ Notwithstanding the above, plaintiff alleges that provisions of the NCAA regulations which prohibit a member institution on probation from appearing on network television is censorship, amounting to a prior restraint and is contrary to First Amendment rights. The Court recognizes that the imposition of sanctions by the NCAA pursuant to its regulations and directives may be State action in the constitutional sense and may, therefore, present a federal question. *Parish v. National Collegiate Athletic Association,* 361 F.Supp. 1214 (W.D.La.1973). See also *Louisiana High School Athletic Association v. St. Augustine High School,* 396 F.2d 224 (5th Cir. 1968); *Oklahoma High School Athletic Association v. Bray,* 321 F.2d 269 (10th Cir. 1963). However, it is doubtful that the NCAA prohibition against the televising of a football game amounts to censorship within the meaning of the First Amendment. In *National Association of Theatre Owners v. Federal Communications Commission,* 136 U.S.App.D.C. 352, 420 F.2d 194 (1969), petitioners contended that the program restrictions which the Commission established in order to prevent subscription television from syphoning programs, talent, and audiences from free broadcasting was repugnant to the First Amendment of the Constitution as a prior restraint of free speech.

One of the restrictions provided that sports events which had been regularly broadcast live on free television in the two years preceding their subscription broadcast could not be shown on subscription television. The Court pointed out that in determining whether a regulation is in conflict with the First Amendment the context and purpose of the regulation should be considered. The Court, in upholding the restrictions, stated that the Commission's purpose was not to affect the ideas which could be presented. The Court went on to state:

"In addition, we note that the restrictions now being challenged deal with categories of speech which are, if anything, farther from the central concerns of the first amendment than those at issue when comparable rulings have been upheld by the courts. In *Red Lion* [*Broadcasting Co. v. F. C. C.,* 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)], the Supreme Court upheld against first amendment attack the 'fairness doctrine,' which restricted broadcasting stations' control over political statements—speech which is certainly the core of the first amendment guaranty. Similarly, our opinion in *Banzhaf* [*v. F. C. C.,* 132 U.S. App.D.C. 14, 405 F.2d 1032 (1968)], upheld restrictions which required broadcasters to allocate time for opponents of cigarette advertising, a matter which was characterized as a public health issue. We think that the [subscription television] rules create far less risk of diminishing the debate on vital public issues."

Certainly the same can be said for the broadcasting of a football game.

■ In addition to the above, the Complaint fails to allege a justiciable controversy that is appropriate for judicial determination. The Declaratory Judgment Act expressly states that the remedy is limited to a "case of actual controversy." 28 U.S.C. § 2201. The requirements for justiciability "are no less strict in a declaratory judgment proceeding than in any other type of suit." *Federation of Labor v. McAdory,* 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

■ The required controversy then must be "one that is appropriate for judicial determination . . . .. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . " *Aetna Life Ins. Co. of Hartford v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The basic question in each case, as pointed out in *Maryland Casualty Co. v. Pacific Coal & Iron Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

■ In the Complaint, plaintiff refers to unlawful contracts between ABC and the NCAA and also a contract between the NCAA and the University of Oklahoma "which is contrary to law and [a] prior restraint." Plaintiff is not a party to these contracts and does not possess an interest sufficient to insure that the dispute sought to be adjudicated will be presented in an adversary context, and in a form historically viewed as capable of judicial resolution. See *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The Court notes that the member institution most affected by the NCAA regulation, the University of Oklahoma, is not even a party to this litigation. Furthermore, plaintiff states in his brief:

"Petitioner believes that the interests of Respondents Oklahoma, U.S.A. and ABC are coterminous with Petitioner's. Surely the State of Oklahoma would wish to have its events publicized (it has extensive public relations services to attract tourism) and would also desire to receive the revenues for its educational programs ($500,000) which were denied during the censorship of the football team. ABC would surely wish to show the best games, which generally means the best teams, because that enhances their ratings and ad revenues. The Commission should wish to have the jurisdiction to investigate any aspects of broadcasting which are detrimental to the public inter-

est. It is an anomaly for these Respondents not to look out for their own best interest. How can this be?"

In support of his contention that the case presents an actual controversy, plaintiff points out that the NCAA by-laws have created a substantial controversy within the NCAA membership, within the Courts, within Congress, and "within the sports writers," citing the *Sports Illustrated* story "The Oklahoma Controversy." The only lack of controversy, apparently, is between plaintiff and the defendants herein. While plaintiff would, no doubt, appreciate an advisory opinion in regard to the issues presented, the case at bar does not present a justiciable controversy proper for determination by this Court within the meaning of 28 U.S.C. § 2201.

It is therefore the determination of the Court that the Motions to Dismiss filed by the defendants should be, and hereby are, sustained.