570 F.2d 320
 COLORADO SEMINARY (UNIVERSITY OF DENVER), Kenneth Brad
Carefoot, Mark Louis Falcone, Ernest John
Glanville, David A. Robinson, Appellants,
v.
NATIONAL COLLEGIATE ATHLETIC ASSOCIATION and Harry E.
Troxell, Appellees.
 No. 76-1837.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 23, 1978.
Argued and Submitted Sept. 28, 1977.
Decided Jan. 23, 1978.
 
 Gordon A. Martin, Jr., Boston, Mass. (Victor Quinn, Edward J. Lemons and Burton F. Brody, Denver, Colo., with him on the brief), for appellants.
 Robert H. Harry of Davis, Graham & Stubbs, Denver, Colo. (John C. Guadnola and Rebecca Love, Denver, Colo., with him on the brief), for appellees.
 Before SETH, Chief Judge, BARRETT, Circuit Judge, and STANLEY, Senior District Judge*.
 PER CURIAM.
 
 
 1
 This action was brought by the University of Denver and by several of its student athletes to enjoin the National Collegiate Athletic Association from imposing sanctions against the hockey team and other DU athletic teams. The trial court denied the plaintiffs' motion for summary judgment and granted a like motion of the defendants with some exceptions. The plaintiffs have taken this appeal.
 
 
 2
 The trial court held that the interest of the student athletes in participating in intercollegiate sports was not constitutionally protected, and that no constitutionally protected right of the University had been violated. We agree with these conclusions, and we agree with the Memorandum Opinion of the trial court appearing at 417 F.Supp. 885.
 
 
 3
 The facts are described in the trial court's Memorandum, and need not be repeated here. It is sufficient to say that the dispute began between the University and the NCAA as to the eligibility of several hockey players, and culminated with the NCAA placing the hockey team on a two-year probation with no post season participation in NCAA events, and also the probation of all other University athletic teams for a one-year period with similar consequences.
 
 
 4
 We conclude that this appeal is controlled by our decisions in Albach v. Odle, 531 F.2d 983 (10th Cir.), and Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir.). These two cases, of course, concerned high school athletics, but the same considerations are applicable here. The arguments as to the difference between high school athletic programs and those in the universities have been examined. We have also considered the point that college athletic scholarship arrangements may create a distinction. But all considered, we find no more than a difference in degree. The fundamental positions are the same, the goals are the same, the stakes are pretty much the same. The same relationship also exists between the primary academic functions of the schools in each category and the athletic programs. The differences in degree or magnitude do not lead to a different result. In each, the athletic program is very important, as are the many other diverse functions, programs, and activities not within the academic core. As we held in Albach v. Odle, 531 F.2d 983:
 
 
 5
 ". . . The educational process is a broad and comprehensive concept with a variable and indefinite meaning. It is not limited to classroom attendance but includes innumerable separate components, such as participation in athletic activity and membership in school clubs and social groups, which combine to provide an atmosphere of intellectual and moral advancement. We do not read Goss to establish a property interest subject to constitutional protection in each of these separate components."
 
 
 6
 It is obvious that the relative importance of the many school "activities" to each other, and to the academic core, depends on where you sit. The "educational process" is indeed a bundle of diverse situations to which the students are subjected by varying degrees of compulsion, both officially and by their peers. This is basically the Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725, assumption. It is then to be applied with the significant conclusion therefrom reached in Albach v. Odle, quoted above, to the effect that if one stick in the bundle is removed, it does not necessarily mean that a constitutionally protected right of a student has thereby been violated.
 
 
 7
 As we said in Oklahoma High School Athletic Ass'n v. Bray, 321 F.2d 269 (10th Cir.) as to the there plaintiffs' claim:
 
 
 8
 ". . . In the case at bar, once the pleadings were pierced at pretrial, it became apparent that Bray's grievance with the Athletic Association lay only with the application of its residence rule, the Board's refusal to grant an exception for hardship, and a general attack upon the amount of power delegated by the high schools to the Association. Such complaints are not within federal cognizance, are not subject to review in federal court, and, indeed, are not subject to review in the state courts of Oklahoma. Had this case not been voluntarily dismissed by plaintiff it would have been the duty of the trial court, upon the present record, to have dismissed it for lack of a federal question."
 
 
 9
 The same conclusion was there reached as to the complaint of the school itself against the association.
 
 
 10
 Thus here also we must hold that there is present no substantial federal question.
 
 
 11
 The equal protection argument, as the trial court observes, is answered by San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. There is here no valid argument based on classification. In the final analysis, the NCAA reacted to the position taken by the University as a member and in response to the NCAA pronouncements. The matter resulting in the probation sanction became removed from the issue of eligibility of the several hockey players.
 
 
 12
 AFFIRMED in all respects.
 
 
 
 *
 Of the District of Kansas, Sitting by Designation