**Ozell JONES, Plaintiff-Appellant,**

v.

**WICHITA STATE UNIVERSITY and National Collegiate Athletic Association, Defendants-Appellees.**

**No. 81–1337.**

United States Court of Appeals, Tenth Circuit.

Jan. 24, 1983.

Lee H. Woodard of Woodard, Blaylock, Hernandez, Pilgreen & Roth, Wichita, Kan., for plaintiff-appellant.

John J. Kitchin of Swanson, Midgley, Gangwere, Clarke & Kitchin, Kansas City, Mo. (James W. Sargent of Sargent, Klenda, Haag & Mitchell, Wichita, Kan., with him on brief), for defendant-appellee Nat. Collegiate Athletic Ass'n.

Defendant-appellee Wichita State University did not appear or file a brief.

Before BARRETT, LOGAN and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Plaintiff-appellant Ozell Jones (Jones) appeals from the district court's denial of a motion for a preliminary injunction. Jones had sued the defendants, the National Collegiate Athletic Association (NCAA), Wichita State University (WSU) and the Missouri Valley Conference [1], seeking to enjoin them from declaring him ineligible to practice and compete as a member of the Wichita State University varsity basketball team. Jones sued under 42 U.S.C.A. § 1983, with jurisdiction based on 28 U.S.C.A. § 1343(3).[2] A recital of the facts leading to the denial of the motion is necessary to facilitate our review.

NCAA is a voluntary unincorporated association which regulates much of the nation's intercollegiate athletics. It consists of approximately 870 four year colleges and universities located throughout the United States. The general policies of the NCAA are established by its members at annual conventions, and carried out by its council of twenty-two members, who are elected by the membership at the annual conventions. NCAA's purposes include: encouraging its members to adopt eligibility rules to comply with satisfactory standards of scholarship, sportsmanship and amateurism; supervising the conduct of, and establishing eligibility standards for, regional and national athletic events; and legislating, through bylaws or resolution of a convention, upon any subject of general concern to the members in the administration of intercollegiate athletics. [R., Vol. I, p. 20].

Jones is a student athlete who enrolled as a freshman at WSU, an NCAA member, in the fall of 1979. He had been awarded a basketball scholarship. Prior to his enrollment at WSU, Jones graduated from Polytechnic High School in Long Beach, California, at the end of the 1978–79 school year. Upon graduation, his high school grade point average (GPA), including physical education grades, was 2.38. Without the physical education grades, Jones's GPA was 1.59.

NCAA has a 2.000 eligibility rule for freshmen student athletes which is set forth in its bylaws.[3] The rule requires high school students to graduate with a 2.000 or better GPA to be eligible for athletic finan-

---

1. The Missouri Valley Conference was dismissed as a defendant by Jones during the hearing on the motion for the preliminary injunction. [R., Vol. II pp. 58–59].

2. 28 U.S.C.A. § 1343(3) provides:

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   \* \* \* \* \* \*

   (3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . . .

   NCAA, "[i]n view of this court's affirmance of *Colorado Seminary, [infra]*, as well as the decisions of several other Circuits, . . . did not raise in the court below, the issue of whether NCAA's activity is sufficient to establish 'state action' under 42 U.S.C. § 1983." Appellee's brief at p. 24.

3. NCAA bylaws provide in pertinent part:
   Section 4–1–(j)–(1) and (2).

Section 1, Individual Eligibility. A participant in a National Collegiate Athletic Association championship must satisfy all of the following requirements:

\* \* \* \* \* \*

(j) He must conform to the following eligibility provisions for all championships and in Division I for regular-season competition practice and athletically related financial aid as indicated. (Adopted: 8/1/75)

(Note: A 2.000 qualifier as used herein is defined as one who is a high school graduate and at the time of his graduation from high school presented an accumulative six, seven or eight semesters' minimum grade-point average of 2.000 (based on a maximum of 4.000) or, subsequent to graduation from high school, presented a minimum grade-point average of 2.000 after at least one academic year of attendance at and graduation from a preparatory school, as certified on the high school or preparatory school transcript or by official correspondence.) (Adopted: 8/1/75)

(1) An entering freshman with no previous college attendance who matriculated as a 2.000 qualifier in a Division I institution shall

cial aid and competition for a Division I school in their freshman year. The 2.000 rule is augmented by NCAA case interpretations Nos. 329 and 330.[4] These interpretations provide that the GPA, for purposes of the 2.000 rule, is to be calculated by the high school for the student athlete in the same manner as the GPA would be calculated for any student at the high school. That is, the NCAA leaves it up to the high school to calculate the student athlete's GPA, including or excluding whatever courses the high school deems appropriate in calculating the GPAs of the entire student body. Some high schools include physical educa-

tion courses in the calculation of the GPA, while some do not. Similarly, some schools also exclude from the calculation of the GPA grades received in courses such as ROTC, student aide, military science, and the like. Case interpretations must be followed by NCAA member institutions. Failure to do so subjects a member to NCAA sanctions.

Toward the end of the basketball season in Jones's sophomore year (late February, 1981) the Commissioner of the Missouri Valley Conference, of which WSU is a member, learned that Jones' participation on the WSU basketball team during his freshman

---

be eligible for financial aid, regular-season competition and practice based only upon institutional and conference regulations. (Adopted: 8/1/75)

(2) An entering freshman with no previous college attendance who matriculated as a 2.000 nonqualifier in a Division I institution and whose matriculation was solicited per O.I. 100 shall not be eligible for financial aid, regular-season competition and practice during the first academic year in residence. Section 4–6–(b)–(1) and (2).

\*     \*     \*     \*     \*     \*

(b) A Division 1 member institution shall not be eligible to enter a team or individual competitors in an NCAA-sponsored meet or tournament unless the institution limits its athletically related scholarship or grant-in-aid awards and eligibility for participation in intercollegiate athletics or in organized athletic practice sessions to those student-athletes who meet the applicable requirements of Bylaw 4–1–(j)–(1), (2), (3), (4), (5), (6) and (9). The eligibility of the student-athletes described in Bylaw 4–1–(j)–(7) and (8) for such aid, practice and participation shall be determined by the transfer and eligibility rules of the institution and its athletic conference. (Revised: 1/9/74, 1/17/76) (Cases Nos. 311 through 334)

(1) If a student reports for practice or competition before his high school grade-point average has been certified, he may practice but not compete for a maximum of two weeks. After this two-week period, the student must have an established minimum high school grade-point average of 2.000 to continue practicing or to compete.

(2) If a high school or preparatory school indicates in writing that it will not provide a student-athlete's grade-point average or convert it to the 4.000 scale, a member institution may submit the individual's high school or preparatory school transcript to the NCAA Academic Testing and Requirements Committee for certification or conversion.

In such cases, the decision of the committee shall be final and binding. (Revised: 1/8/80)

4. NCAA case interpretations Nos. 329 and 330 provide:

NO. 329—HIGH SCHOOL GRADE POINT AVERAGE

Situation: In determining eligibility under Bylaw 4–6–(b) (2.000 rule), the high school in which a prospective student-athlete is enrolled must provide a statement of his grade-point average. (231)

Question: *Is it necessary that the high school consider grades attained in all courses which were taken by the young man at the high school and are contained on his high school transcript?*

Answer: Yes, it being understood that the high school shall consider only those grades in courses which it considers for all students in computing grade-point average. (B 4–6(b))

NO. 330—HIGH SCHOOL GRADE–POINT AVERAGE

Situation: When a grade-point average is utilized for purposes of satisfying the requirements of Bylaw 4–6–(b) (2.000 rule), the average must be calculated by the high school and include only those grades in courses which the high school normally considers for all students in computing grade-point averages. (513)

Question: *If the high school utilizes more than one method to compute accumulative grade-point averages for its students, is it permissible to consider the method most beneficial to the prospect in determining his eligibility under the 2.000 rule?*

Answer: Yes, provided that under its normal procedures the high school actually computes an accumulative grade-point average utilizing that method for each student at the high school, without any special request by the student or a member institution. (B 4–7–(b))

year may have been in violation of the 2.000 rule as supplemented by the case interpretations. The high school from which Jones graduated did not normally include physical education grades in calculating GPAs for all students. For purposes of NCAA eligibility under the 2.000 rule, then, Jones had less than the required GPA to compete in intercollegiate athletics his freshman year.[5]

On March 2, 1981, WSU declared Jones ineligible to compete on its varsity basketball team. Under NCAA case interpretation No. 334,[6] since Jones had played one year while he was ineligible, he would be ineligible to compete in interscholastic athletics for an entire year, *i.e.,* he would be required to "sit out" one year. Further, if Jones remained at WSU, he would entirely lose one of his remaining two years of eligibility. If Jones transferred to another university, however, he would be eligible to compete for two more years, after sitting out for one year.

After WSU declared Jones ineligible, it exercised its right and appealed its decision to the NCAA. The expedited appeal was denied after a hearing on March 3, 1981. Jones immediately filed suit, claiming that although the NCAA 2.000 rule was valid, case interpretations Nos. 329 and 330 denied him equal protection under the law as guaranteed by the Fourteenth Amendment to the United States Constitution. The trial court granted a temporary restraining order which allowed Jones to continue competing with WSU's basketball team until his motion for a preliminary injunction was heard on March 12, 1981.

After a full hearing on the motion, the trial court ruled that a federal question existed within the purview of the Fourteenth Amendment; that a rational relationship existed between the rule and its permissible objectives; and that, therefore, Jones had not demonstrated a likelihood of success on the merits. The trial court consequently denied the motion for a preliminary injunction.

### I.

Jones contends that the trial court did not err in finding that he presented a substantial federal question, thereby vesting the court jurisdiction to hear his claim.[7] In light of the clear precedent in this circuit regarding suits by student athletes, we disagree.

In *Wiley v. NCAA,* 612 F.2d 473 (10th Cir.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980), we stated, "[t]his court has consistently found that, unless clearly defined constitutional principles are at issue, the suits of student-athletes displeased with high school athletic associations or NCAA rules do not present substantial federal questions." *Id.* at 477.

---

**5.** All parties involved acted in good faith. Polytechnical High School in Long Beach certified Jones's GPA as 2.38 to WSU in the mistaken belief that it was proper to do so for NCAA purposes. Although the official GPA did not include physical education grades, the high school sometimes calculated the GPA including physical education grades for students upon request. In this case, the high school was responding to a request for certification of Jones's GPA by WSU.

**6.** NCAA case interpretation No. 334 provides:
NO. 334—2.000 RULE—INELIGIBLE PARTICIPATION AND AID
Situation: A student-athlete practices or participates in intercollegiate competition and/or receives institutional financial assistance, based in some degree upon his athletic ability, while ineligible under the provisions of Bylaw 4–6–(b) (2.000 rule). (241)
Question: *How is a student-athlete's future eligibility affected?*

Answer: He shall be charged with the loss of one year for practice and varsity eligibility by his institution for each year gained improperly. The student-athlete shall be declared ineligible at the time it is determined he gained eligibility improperly. Prior to declaring the student-athlete ineligible, the institution in which he is enrolled may provide the young man an opportunity for a hearing. The institution may appeal to the Council for a reduction in the period for ineligibility. The loss of eligibility may apply only to the institution involved in the violation. (B 4–6(b))

**7.** After the filing of the appellate briefs in this case, Jones transferred to California State University at Fullerton. However, NCAA agrees that this case is not moot due to the transfer because if NCAA prevails in this suit, Jones's records attained at WSU are subject to NCAA procedures. Appellee's Supplemental brief at p. 6.

*Wiley* followed a line of Tenth Circuit opinions which entertained similar issues and reached the same conclusions. *See Colorado Seminary v. NCAA,* 570 F.2d 320 (10th Cir.1978); *Albach v. Odle,* 531 F.2d 983 (10th Cir.1976); *Oklahoma High School Athletic Association v. Bray,* 321 F.2d 269 (10th Cir.1963). Jones seeks to distinguish *Wiley* because of our statement that "the case does not implicate the right to a college education, or even to participate in intercollegiate athletics." *Wiley,* 612 F.2d at 476. (Wiley had been declared ineligible due to financial aid in excess of NCAA regulations, but continued participating in intercollegiate athletics until his graduation under protective court order.)

While it is true that in *Wiley* the student had already graduated, and only his records and awards were at stake, we are of the view that the principle still applies. As in the present case, *Wiley* involved an NCAA regulation which made the student-athlete ineligible to participate in intercollegiate athletics. Furthermore, our previous opinions have dealt with situations where athletic associations bar students from competition. In *Albach v. Odle, supra,* we upheld the dismissal of a suit challenging a New Mexico Activities Association rule which automatically barred from interscholastic high school athletic competition for one year, any student who transferred from his home district to a boarding school or vice-versa. We did so on the ground that the suit failed to raise a substantial federal question. In *Oklahoma High School Athletic Association v. Bray, supra,* we stated:

> In the case at bar, once the pleadings were pierced at pretrial, it became apparent that Bray's grievance with the Athletic Association lay only in the application of its residence rule, the Board's refusal to grant an exception for hardship, and a general attack upon the amount of power delegated by the high schools to the Association. Such complaints are not within federal cognizance, are not subject to review in federal court, and, indeed, are not subject to review in the state courts of Oklahoma. Had this case not been voluntarily dismissed by plaintiff it would have been the duty of the trial court, upon the present record, to have dismissed it for lack of a federal question.

321 F.2d at 273. Although these two cases involved high school athletics, *Colorado Seminary, supra,* established that the same principles apply to a challenge of NCAA regulations.

■ In the present case Jones is challenging an NCAA rule which declared him ineligible for interscholastic athletic competition. In light of the clear precedent in this circuit, we hold that Jones's claim is "no longer open to discussion", *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974) (citation omitted), and does not present a substantial federal question.

## II.

■ Even if this court recognized suits by student athletes challenging athletic association regulations as presenting substantial federal questions, the district court's denial of Jones's motion for preliminary injunction must prevail.

Jones has challenged NCAA case interpretations Nos. 329 and 330 on equal protection grounds. He claims these rules result "in a disparate and unequal application of the 2.000 rule thereby causing prospective student athletes to be treated in a discriminatory manner." Appellant's opening brief at p. 17. Jones contends that because the computation of GPAs is left to the individual high school, and some include physical education grades in the computation while some do not, students may be ineligible "although they had the same (or even better) academic achievement, class participation and attendance as their counterparts who are eligible under that [the 2.000] standard." *Ibid.* at p. 18. Thus, he argues, disparate classes are created.

Jones concedes that the proper equal protection analysis is the rationality test, rather than the strict scrutiny test, because in this context he is not a member of a suspect class. Appellant's opening brief at p. 19. Jones has not alleged impairment of a fundamental right. *See San Antonio Independent School District v. Rodriguez,* 411 U.S.

1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Albach v. Odle, supra.* "The standard which must be applied in reviewing this case is whether the classification system of the NCAA is shown to bear some reasonable relationship to its legitimate purposes." *Associated Students, Inc. v. NCAA,* 493 F.2d 1251 (9th Cir.1974). *Accord, Shelton v. NCAA,* 539 F.2d 1197 (9th Cir.1976) (upholding as rational NCAA rule prohibiting student athletes from signing professional contract, whether enforceable or not); *Howard University v. NCAA,* 510 F.2d 213 (D.C.Cir.1975) (upholding as rational NCAA 1.600 rule, forerunner to the 2.000 rule, and five year rule requiring student athlete to complete four years of eligibility within five calendar years); *Parish v. NCAA,* 506 F.2d 1028 (5th Cir.1975) (upholding as rational the 1.600 rule). *See also Wiley v. NCAA, supra* (Logan, J., dissenting) (proper test is whether rule rationally furthers some legitimate purpose).

In the present case, the purposes of the 2.000 rule are

> [T]o reduce the possibility of the exploitation of young athletes through the recruiting of athletes who will not be representative of an institution's student body and will probably be unable to meet the necessary academic requirements for a degree, to foster the image of collegiate athletics as sports engaged in by athletes who are first and primarily college students, and as a recognition of the possibility that any student who cannot meet the requirements of the Rule should not engage in athletics during his freshman year but should devote his full time to study.

[R., Vol. I, p. 22].

We view these as clearly permissible objectives. *Accord, Howard University v. NCAA, supra; Parish v. NCAA, supra.* To carry out these objectives, the eligibility of freshmen obviously must be determined at the time of their application. Pursuant to NCAA bylaw 4–1–(j), this determination is made by the high school GPA.

Jones argues with the method whereby the GPA is computed. He contends that the NCAA should make the computation, including those grades it sees fit. However, as the NCAA points out, the NCAA "does not, and should not, tell the high schools what courses or what curriculum they should utilize in figuring the GPAs of their own students." Appellee's brief at 18; [R., Vol. II, p. 124]. The purpose of case interpretation No. 330 is to have the student athlete's standing determined within his own high school. The student athlete, with respect to computation of his/her GPA, is treated the same as any other student at the particular high school. No special computation is to be made for the student athlete. NCAA does not delve into the curricula at the various high schools throughout the country, and make substantive determinations regarding the worth of various courses.[8] Thus, NCAA has left this determination with local high schools and school boards, on the predicate that they are in a better position to make this type of substantive determination. We agree. This policy clearly furthers NCAA's objectives of having a representative student body and of admitting individuals who will be students first and athletes second. We hold that NCAA 2.000 rule and its attendant case interpretations are rationally related to NCAA's permissible objectives and are not violative of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The district court did not abuse its discretion in denying Jones's motion for a preliminary injunction. Jones did not meet his burden of proof that he would ultimately be entitled to the relief he sought. *See Crowther v. Seaborg,* 415 F.2d 437 (10th Cir.1969).

AFFIRMED.

LOGAN, Circuit Judge, concurring:

I recognize that Judge Barrett has properly summarized this Circuit's position on

---

**8.** In this regard, we note again that many high schools, including Polytechnical High School from which Jones graduated, do not include in computation of the GPA courses such as student aide, military science, etc.

whether Mr. Jones has presented a substantial federal question. *Wiley v. NCAA,* 612 F.2d 473 (10th Cir.1979), *cert. denied,* 446 U.S. 943, 100 S.Ct. 2168, 64 L.Ed.2d 798 (1980), an en banc decision of this Court, controls this case. Nevertheless, I continue to adhere to the position stated in my dissent in that case. But for the binding effect of *Wiley,* I would hold that Mr. Jones' equal protection claim raises a substantial federal question. Having said that, I agree with Judge Barrett's analysis in Part II of the opinion. The NCAA's high school grade point interpretations Nos. 329 and 330 serve lawful aims of that organization and its member universities. Wichita State University's enforcement of those interpretations against its student athletes rationally furthers a legitimate purpose of that state actor. Therefore, I concur in the disposition of this case.

SEYMOUR, J., concurs with LOGAN's, J., concurrence.