**ASSOCIATED STUDENTS, INC. OF CALIFORNIA STATE UNIVERSITY— SACRAMENTO et al., Plaintiffs-Appellees,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION et al., Defendants-Appellants.**

No. 73-2278.

United States Court of Appeals, Ninth Circuit.

March 14, 1974.

Richard J. Archer (argued), and Kristina M. Hanson of Sullivan, Jones & Archer, San Francisco, Cal., George H. Gangwere, of Swanson, Midgley, Eager, Gangwere & Thurlo, Kansas City, Mo., for defendants-appellants.

Nancy B. Reardan (argued), Sacramento, Cal., for plaintiffs-appellees.

Before BROWNING and ELY, Circuit Judges, and TAYLOR,* District Judge.

PER CURIAM:

This is an appeal from a decision and order of the district court granting a preliminary injunction prohibiting the defendants-appellants, National Collegiate Athletic Association, et al. (NCAA), from enforcing its freshman eligibility Rule 1.600, hereinafter set forth, only as to the plaintiffs-appellees Lopez and Martinez, and also restraining NCAA from penalizing the California State University at Sacramento (CSUS) for its failure to disqualify the plaintiffs from athletic participation for one year. The district court held that plaintiff Associated Students, Inc. did not have standing in this action, and did not grant the injunction as to the other nine individual plaintiffs for the reason that the year of ineligibility imposed against them had expired.

The district court held that the actions of NCAA, prohibited by the injunction, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. In so holding, the district court held that the NCAA's enforcement activities were "state action" and therefore subject to the standards of the Fourteenth Amendment. The court also determined that the preliminary injunction would not alter the *status quo ante litem*. The appellants contend that each of these holdings was erroneous.

The material facts as found by the district court are undisputed and are as follows:

The eleven individual plaintiffs-appellees (plaintiffs) are student-athletes who were admitted to CSUS under the California Administrative Code, Title V, § 40759(b), commonly referred to as the "Four Percent Rule". Students admitted under that program are not required to take standard achievement tests such as the Scholastic Aptitude Test (SAT) or the American College Test (ACT) in order to qualify for admission. Instead, they are admitted on the basis of such factors as economic need, motivation and maturity. In the opinion of the University, each of the plaintiff-athletes had the potential to succeed academically at the college level, notwithstanding deficiencies in their educational background which would normally have prevented their admission under the usual standards.

The plaintiff Associated Students, Inc. of CSUS is an organization which represents student interests in a number of areas, including athletic programs. The NCAA is an association of most of America's four year universities and colleges, approximately one-half of which

* Of the District of Idaho, sitting by designation.

are public institutions. It is partially financed through dues paid by its members in an amount not exceeding $200 per year for each member institution. The Association sponsors virtually all regional and collegiate athletic competitions including National Collegiate Championship events, invitational and post-season meets and tournaments, as well as certain televised collegiate athletic events.

The court found that one of the goals of the NCAA is to insure that the athlete is an integral part of the student body. Constitution of the NCAA, Article 2, § 2(a)(1972). That apparently in pursuit of that objective, the NCAA adopted Bylaw 4–6–(b)–(1) which is known as the 1.600 rule. Rule 1.600 provides in pertinent part, as follows:

> "(b) A member institution shall not be eligible to enter a team or individual competitors in an NCAA sponsored meet, unless the institution in the conduct of all of its intercollegiate athletic programs: (1) Limits . . . eligibility for participation in athletics or in organized athletic practice sessions during the first year in residence to student-athletes who have a predicted minimum grade point average of at least 1.600 (based on a maximum of 4.000) as determined by the Association's national prediction tables or Association-approved conference or institutional tables." [1]

Under the NCAA prediction tables, a student-athlete's grade point is predicted on the basis of a formula utilizing (1) either high school grades or rank in high school class and (2) a score on a scholastic aptitude examination (either the SAT or the ACT). If a student has no score reported on either the SAT or ACT, it is impossible for him to predict a 1.600 grade point average as required

under the 1.600 Rule, whatever his high school grade point average or rank was.

Subsequent to the adoption of the 1.-600 Rule, Official Interpretation 418 (O.I. 418) of the rule was adopted. Under the NCAA Constitution, Article Six, § 2 (1972), the NCAA Counsel is empowered to make official interpretations of the Constitution and Bylaws which are binding after they are published and circulated to the membership. A pertinent part of O.I. 418 provides:

> "A student-athlete who practices or participates while ineligible under the provisions of Bylaw 4–6–(b)–(1) [the 1.600 Rule], shall be charged with the loss of one year of practice and varsity eligibility by his institution for each year gained improperly which shall be the next year the student is in attendance. . . . . ."

As found by the district court, it is not disputed that some NCAA member institutions did not follow the 1.600 Rule and still continued as members in good standing in spite of the fact their teams were barred from participating in NCAA-sponsored events including collegiate championships and post-season competition such as post-season football bowl games, and from appearing in NCAA sponsored nationally televised events. That faced with these prospects, CSUS elected to be governed by the 1.600 Rule and was, therefore, subject to its terms at all relevant times.

The district court found that at least one of the plaintiff-athletes, Ralph Ligons, took the ACT examination but did not predict 1.600 or better. That the rest of the individual appellees either (1) did not take the SAT or ACT examinations presumably because they were not required to take either exam in order to qualify for CSUS or (2) took one or both of the exams but did not

---

1. Bylaw 4–6–(b)–(1) was amended at the NCAA annual Convention on January 13, 1973, at which time the requirement that a student predict a 1.600 grade point average before being declared eligible to participate in intercollegiate athletics was replaced by a requirement that a student need only graduate from high school with a 2.00 in order to be declared eligible to participate in athletics. This amendment will not become effective until the 1974–75 academic year and until that time, the 1.600 Rule will continue to be enforced by the NCAA.

predict a 1.600 minimum grade point average thereunder. That for whatever reason, none of the eleven predicted a 1.-600 grade point average on the NCAA prediction tables prior to his first year at CSUS. Nevertheless, as a result of errors, oversights and misunderstandings on the part of the University, each of the plaintiff-athletes was erroneously certified as eligible to participate in intercollegiate athletics and each did participate during his freshman year at CSUS.

From the record, it appears that none of the student-athletes were aware of the necessity of predicting a minimum grade point average in order to be eligible to compete in intercollegiate athletics. However, each of the plaintiff-athletes did in fact obtain at least a 1.600 grade point average by the end of his first year at CSUS and each is now in good academic standing at the University.

When it came to the attention of CSUS that there had been violations of the 1.600 Rule, the University promptly reported the matter to the NCAA. Thereafter, the NCAA found that the plaintiff-athletes had participated in intercollegiate athletics while ineligible under the 1.600 Rule and strongly urged CSUS to declare the student-athletes ineligible pursuant to O.I. 418, *supra*. Under the procedure followed by the NCAA, it is the school involved which is called upon to declare individual athletes ineligible pursuant to NCAA legislation. The NCAA sanctions are imposed against the school and not the individual athlete. Stiff sanctions can be imposed against an NCAA member institution which fails to declare an individual athlete ineligible in accordance with NCAA legislation.

CSUS could either declare the plaintiff-athletes ineligible or expose its entire athletic program to stiff sanctions by the NCAA. The University chose to charge each of the plaintiff-athletes with one year of ineligibility. With the exception of plaintiff Martinez, each of the plaintiff-athletes was declared ineli-

gible for the 1972–73 academic year. Plaintiff Martinez was declared ineligible until the end of the fifth game of the 1973–74 football season. Only plaintiff Lopez has outwardly participated in intercollegiate athletics since the athletes were charged with ineligibility in October, 1972 and his participation has been under the protection of a temporary restraining order issued by the district court.

We agree with the district court that the primary and controlling issue in this case is whether the NCAA's 1.600 Rule, as interpreted by O.I. 418, results in an unreasonable classification in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

■ In its application of the Equal Protection Clause, the trial court determined that the actions of NCAA complained of did constitute "state action" under the United States Constitution Amendment XIV, #1. Appellants argue that the record fails to disclose any state involvement in the NCAA's regulatory operations sufficient to establish jurisdiction under the Fourteenth Amendment. We agree with the district court that from the evidence it must be concluded that the actions of NCAA, complained of in this action, do constitute "state action". In Parish v. National Collegiate Athletic Association, 361 F.Supp. 1214, 1219 (W.D.La., 1973), the court stated:

> "Although NCAA is a nationwide association, it does control public schools which are State agencies to the extent that the high school athletic associations control their respective members at least insofar as regulations, sanctions, and discipline are concerned. Moreover, State funds are used by public schools to pay membership dues in this association.
>
> Therefore, we must and do conclude that there definitely is State action here, in the constitutional sense, when NCAA regulates schools and universities at least half of which are public.

In the only other decision on this particular point, although unreported, Judge Wollenberg of the Northern District of California is in agreement that such action is State action. Curtis v. NCAA, No. C–712088 ACW."

Even though we have determined that NCAA's imposition of sanctions against CSUS and the athletes here involved is "state action" for constitutional and jurisdictional purposes, a serious question is presented whether plaintiffs' position raises a substantial federal question under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 granting federal courts jurisdiction and authority to redress deprivations under color of state law, custom or usage of a right or privilege secured by the Constitution or federal law. The Supreme Court in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (March 21, 1973), held that education was not a fundamental right, explicitly or implicitly, protected by the Constitution, requiring judicial scrutiny of the situation in a case such as this. See also: Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir. 1970), wherein it was held that a high school athlete's argument in regard to eligibility regulations did not raise to constitutional dimensions and carry with it the entire bulwark. This reasoning was applied in Parish v. National Collegiate Athletic Association, 361 F.Supp. 1220, 1225 (W.D.La., July 31, 1973).

Assuming that in the circumstances of this case the plaintiffs claimed rights or privileges are protected by the Constitution, we do not believe that the 1.600 Rule, as interpreted by O.I. 418, results in an unreasonable classification in violation of the Equal Protection Clause of the Constitution.

The standard which must be applied in reviewing this case is whether the classification system of the NCAA is shown to bear some reasonable relationship to its legitimate purposes. In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the Supreme Court stated:

"In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 [990] (1920)."

The evidence of NCAA reveals that NCAA adopted the 1.600 Rule in order to reduce the possibility of exploiting young athletes by recruiting those who would not be representative of an institution's student body and probably would be unable to meet the necessary academic requirements for a degree; and also to foster and preserve the concept of college athletics as a sport engaged in by athletes who were first and primarily college students, and to recognize the probability that any student who could not meet the requirements of the Rule should not engage in athletics during his freshman year, but should devote his full time to study.

■ The trial court stated: "Without deciding the question, it appears that this classification is reasonably related to the purposes of the 1.600 Rule." However, the court concluded that the 1.600 Rule, as interpreted by O.I. 418, created a classification which did not conform to equal protection requirements. We are unable to agree with this conclusion.

We believe that the 1.600 Rule's classification is reasonably related to the purposes of the Rule for which it was enacted. All persons in a similar class or in similar circumstances are intended to be treated alike. It may be that in the application of the Rule unreasonable results may be produced in certain situations, which is not unusual in the application of a generalized rule such as the one here. We further believe that the Rule, as interpreted by O.I. 418, announcing the penalty for non-compliance, is reasonably related to the purposes for which the Rule was enacted. Plaintiffs argue that it is this official interpretation of the Rule which creates a classification which does not conform to equal protection requirements. It is contended that once a student has earned a grade point average over a period of time, then it is unreasonable, in light of the purposes of the Rule, to impose sanctions against the student-athlete because he failed for some unknown reason to take the test or to predict the 1.600 grade point. It is urged that any sanctions imposed should be predicated on the actual grade point average of the student attained during his freshman year while competing in intercollegiate athletics during his first year. It is the contention of plaintiffs that since the student-athletes in this action earned at least a 1.600 grade point average at the end of their freshman year at CSUS, the 1.600 Rule of the NCAA, as interpreted, is in violation of the Equal Protection Clause and is therefore unconstitutional as far as it seeks to declare these student-athletes ineligible for participation in intercollegiate athletics for a period of time, in this instance one year, for the reason that they had failed to predict a 1.600 grade point average prior to entrance to CSUS, and practiced for and competed in intercollegiate athletics during their first year at CSUS. Although the district court agreed with the theory of plaintiffs, we are unable to do so.

■ Needless to say, a rule must be enforced. Without some form of penalty, the Rule would be meaningless, leaving member schools free to do as they pleased in recruiting high school athletes. Like the Rule, the penalty must be reasonably related to the Rule's purposes, but no more is required; we need not be convinced that the penalty is the best that might have been provided.

One of the purposes of the official interpretation of the 1.600 Rule is to prevent member schools from granting scholarships to student-athletes who do not show a possibility of attaining a degree after taking part in the prescribed testing procedures before entering college. According to plaintiffs' theory and the decision of the lower court, all member schools could recruit athletes without giving any examination to them, or those athletes whose examinations did not predict successful graduation, and then if they did obtain a higher grade point average than 1.600 after the first year in school, they would be entitled to participate in NCAA sponsored athletics thereafter. Such a situation would prevent effective enforcement of the 1.600 Rule which we believe to be rational in order to achieve NCAA's objective. In order to meet that objective, determination of the eligibility of a student-athlete must be made at the time of the student's application and certification. If determination of eligibility is made at a later date, the classification would be destroyed. Such a procedure would allow colleges to recruit ineligible athletes with the hope that they would meet graduation prediction standards after their first year in college so as to become eligible for athletics during their college life. It would also permit ineligible students to engage in first year athletics along with those who proved to be eligible during the first year which, in effect, would destroy the purpose of the 1.600 Rule. In our opinion, NCAA's official interpretation of its 1.600 Rule does not create a classification which violates the Equal Protection Clause of the Constitution. See Parish v. National Collegiate Athletic Association, supra, at 1227, 1228.

It is well established and conceded that a preliminary injunction is "an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury". Checker Motors Corporation v. Chrysler Corporation, 405 F.2d 319 (2nd Cir. 1969). In our opinion, there is no clear showing of probable success by plaintiffs in this action and that possible irreparable injury will occur to any of them.

The order granting the preliminary injunction is reversed.