Elssy **RIVAS TENORIO et al.,**
**Plaintiffs, Appellants,**

v.

**LIGA ATLETICA INTERUNIVERSITARIA et al., Defendants, Appellees.**

**No. 76–1396.**

United States Court of Appeals,
First Circuit.

Argued Feb. 16, 1977.

Decided May 3, 1977.

A. J. Amadeo Murga, Santurce, P. R., for plaintiffs, appellants.

H. Febus Bernardini, Ponce, P. R., for defendants, appellees.

Before CAMPBELL, Circuit Judge, VAN OOSTERHOUT *, and INGRAHAM **, Senior Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

Plaintiffs Elssy Rivas Tenorio and Bellanira Borrero Castillo are citizens of the Republic of Colombia. On the basis of a challenged regulation promulgated and enforced by defendants, they were deprived of medals and prizes won at and were denied future participation in certain intercollegiate track and field competitions held annually in the Commonwealth of Puerto Rico. Defendants are the Liga Atletica Interuniversitaria (LAI), the rough equivalent in Puerto Rico of the National Collegiate Athletic Association (NCAA) in the United States, and the individual members of its executive committee.

The challenged regulation provides in substance that student athletes not born in Puerto Rico who enter an LAI member institution after their twenty-first birthday may not participate in the annual competitions.[1] In August 1974 plaintiffs, according to their own testimony, entered the Colegio Universitario del Turabo (CUT), a private LAI member university, at the respective ages of twenty-five and twenty-two [2] and subsequently were successful participants at the annual competitions as representatives of CUT. Defendants in answer admit that plaintiffs were deprived of the medals and prizes won and denied future participation as a consequence of the above regulation.

Plaintiffs contend that the challenged regulation contravenes the equal protection guarantee of the United States Constitution and that they are entitled to certain legal and equitable relief pursuant to 42 U.S.C. § 1983 [3] and its jurisdictional counterpart 28

---

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

1. Article VII, Section 12 of the LAI regulations in pertinent part provides:

    Student athletes not born in Puerto Rico and who have entered a member institution before reaching the age of twenty-one years may form part of any athletic team representing a LAI member in its program of annual competitions, it being understood that:

    \* \* \* \* \* \*

    (d) this rule will not apply to those students not born in Puerto Rico who have resided here for at least five (5) years before entering college in Puerto Rico or who are offspring of a puertorican father or mother.

\* \* \* \* \* \*

[Translated from the Spanish by the district court.]

2. The complaint alleges that plaintiffs entered CUT at the respective ages of twenty-three and twenty-one. The apparent discrepancy is not explained in the record.

3. 42 U.S.C. § 1983 provides:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

U.S.C. § 1343(3).[4] The district court, after conducting a hearing and upon consideration of various exhibits and stipulations presented to it, dismissed the complaint and ordered entry of judgment for defendants. It concluded: (1) promulgation and enforcement of the challenged regulation were neither "governmental" action within the meaning of the Constitution nor action "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" within the meaning of § 1983; and (2) even if they were, plaintiffs had failed to establish a claim under § 1983. Disagreeing with both conclusions, we reverse.

## I.

■ Plaintiffs claim that defendants, under color of Commonwealth regulation, have deprived them of equal protection of the laws. It is now settled that either the equal protection component of the Fifth Amendment[5] or the equal protection clause of the Fourteenth Amendment applies to residents of Puerto Rico, *Examining Board v. Flores de Otero,* 426 U.S. 572, 600–01, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976), that deprivations of equal protection under color of Commonwealth law or regulation are redressible under 42 U.S.C. § 1983, *id.* at 597, 96 S.Ct. 2264, and that the United States District Court for the District of Puerto Rico has jurisdiction under 28 U.S.C. § 1343(3) to enforce the provisions of 42 U.S.C. § 1983, *id.* It is accordingly clear, as the parties appear to agree, that the sole jurisdictional issue before us is whether the actions of defendants were taken under color of Commonwealth regulation within the meaning of § 1983, or, concomitantly, whether those actions constitute "Commonwealth action" within the meaning of the Constitution. Although we have previously noted that there may be an analytical difference between the "under color of" requirement of § 1983 and the governmental action doctrine of the Fifth and Fourteenth Amendments, we are fully satisfied in the present context that the governing standards with respect to these two issues are identical. *Cf. Fletcher v. Rhode Island Hospital Trust National Bank,* 496 F.2d 927, 929 n. 4 (1st Cir.), *cert. denied,* 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *Lavoie v. Bigwood,* 457 F.2d 7, 15 (1st Cir. 1972).

■ Plaintiffs, in arguing that LAI's actions do constitute Commonwealth action, rely heavily on a line of cases involving the NCAA. Although the Supreme Court has not yet ruled on this issue, three courts of appeals have held that NCAA action can and does constitute governmental action for purposes of the Constitution and § 1983. *Howard University v. NCAA,* 166 U.S.App. D.C. 260, 510 F.2d 213 (1975); *Parish v. NCAA,* 506 F.2d 1028 (5th Cir. 1975); *Associated Students, Inc., v. NCAA,* 493 F.2d 1251 (9th Cir. 1974). The district court below did not dispute the correctness of these decisions; it rested its decision instead on what it considered to be material

injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs also urged before the district court that the actions complained of were redressible under 42 U.S.C. §§ 1981 and 1985. The district court concluded otherwise, and plaintiffs do not renew these claims on appeal.

4. 28 U.S.C. § 1343 provides as follows:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* · \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress

providing for equal rights of citizens or of all persons within the jurisdiction of the United States[.]

\* \* \* \* \* \*

Plaintiffs did not specifically plead 28 U.S.C. § 1343(3), although they did plead 42 U.S.C. § 1983. In this context the nature of the action is plainly discernible from the complaint and the failure to cite 28 U.S.C. § 1343(3) is of no consequence. *Whitner v. Davis,* 410 F.2d 24, 28 n. 3 (9th Cir. 1969). Since we ultimately conclude that jurisdiction does lie under § 1343(3), we do not pause to consider whether it also lies under the general federal question statute, 28 U.S.C. § 1331, which was pleaded.

5. See *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

differences between the NCAA and the LAI. Defendants likewise do not dispute the correctness of these decisions; the reasoning in their brief essentially tracks that of the district court. We conclude, in any event, that *Howard University, Parish,* and *Associated Students* correctly resolved the governmental action issue with respect to the NCAA. We further conclude that the differences between the NCAA and the LAI, while of undoubted significance in other contexts, are not of such a nature as to remove the activities of LAI from the ambit of Commonwealth action.

It is not necessary that we canvass *in toto* the legal principles underlying the NCAA decisions. It suffices for present purposes to note that we are in agreement with the thorough treatment of that subject by Judge Tamm for the District of Columbia Circuit in *Howard University, supra* at 216–20. For purposes of comparison, however, we do extract from that opinion the salient facts upon which the decision rested. These are: (1) approximately half of the NCAA's 655 institutional members are state- or federally-supported; (2) public institutions provide the vast majority of the NCAA's capital; (3) the state instrumentalities are a dominant force in determining NCAA policy and in dictating NCAA actions; (4) the NCAA's regulation and supervision over intercollegiate athletics is extensive and represents an immeasurably valuable service for its member institutions; and (5) the NCAA negotiates television contracts, the proceeds of which, $13,000,000 annually, flow directly to participating schools, primarily the public universities. *Id.* at 219–20.

The district court, in distinguishing the LAI from the NCAA, relied on the facts that the LAI is incorporated while the NCAA is not and that the LAI is financially self-sufficient while the NCAA is not. We do not agree that these differences merit a different result.[6] Moreover, although the record on appeal is not as satisfactory as it might be, it is sufficient to establish that the LAI is substantially similar, albeit not identical, to the NCAA and that the actions here challenged are properly characterized as Commonwealth action.

The LAI is composed of seven member institutions, four of which are Commonwealth universities and colleges.[7] LAI policies and regulations are established by a governing board, of which the executive committee is a part, which consists of certain administrative, faculty and student representatives of each of the member institutions, both public and private. All actions of the governing board and its executive committee are reviewable by a directive board, which is composed of the chancellor or president of each of the member institutions, both public and private. Since a majority of the member institutions are Commonwealth institutions, it is clear that the Commonwealth instrumentalities are a dominant force in determining LAI policy and in dictating LAI actions. *See Howard University v. NCAA, supra* at 219.

Also like the NCAA, the LAI's regulation and supervision over intercollegiate athletics is extensive and represents a valuable service for its member institutions. *See id.* at 220. The record, while not establishing that such regulation and supervision is as extensive as that of the NCAA, does establish at least that LAI's authority extends to such matters as organizing the annual competitions, establishing individual eligibility criteria, collecting gate receipts and negotiating television and radio rights, and providing disciplinary sanctions to member in-

---

**6.** We are not persuaded that the fact of incorporation *vel non* has any relevance whatsoever to the present inquiry. The district court's reasoning that corporations have separate and distinct judicial personalities and that accordingly officials of member Commonwealth institutions, when acting on behalf of LAI, are not acting in their capacity as Commonwealth officials lacks legal support.

**7.** At oral argument, counsel for defendants explained that the "four" Commonwealth universities and colleges are all part of the University of Puerto Rico. On questioning by the court, however, he admitted that the four schools field separate athletic teams and, more importantly, that each has a separate voice in establishing LAI policy.

stitutions and individual athletes for violations of the regulations. To a substantial extent, then, the LAI does control public schools which are Commonwealth instrumentalities and does perform a traditional governmental function. *See Parish v. NCAA, supra* at 1032–33; *Associated Students, Inc., v. NCAA, supra* at 1254–55. In that sense, the Commonwealth has indeed relinquished some portion of its governmental power to LAI. *See Howard University v. NCAA, supra* at 220; *Parish v. NCAA, supra* at 1033.[8]

It is true, as noted by the district court, that the LAI has been financially self-sufficient. Specifically, it finances itself by selling entrance tickets to the annual competitions and by collecting the proceeds of radio and television contracts negotiated by it. Nor does it channel any portion of the funds so collected to the member institutions. However, provision is made in LAI's regulations that if LAI should be unable to cover its expenses from its receipts the losses shall be assumed in equal parts by each of the member institutions. This provision, although it has apparently never been invoked, demonstrates quite forcefully for whose benefit LAI's activities are carried out.

We by no means intend to minimize the significance of LAI's independent financial status to date, which is only partially undercut by the fact that ultimate provision is made for member contribution. We are simply unconvinced that this independent financial status sufficiently mitigates the very substantial entanglement and interdependence between public and ostensibly private entities otherwise present in the NCAA cases and otherwise present here. Although the question is indeed closer here than it was in the NCAA cases, the ultimate resolution in those cases was not difficult, as the following excerpt from the *Howard University* opinion, *supra* at 220, makes clear:

If the NCAA was composed of solely public institutions, clearly state action would be present. In contrast, if the NCAA had no public members, its actions would be private for constitutional purposes. Drawing the line as to the requisite quantum of public participation to invoke fourteenth amendment protections is a difficult task indeed. However, that is unnecessary in this case where the degree of public participation and entanglement between the entities is substantial and pervasive.

While the degree of public participation and entanglement here may not be pervasive, and while it certainly is not as pervasive as it was in the NCAA cases, it is nonetheless very substantial. We conclude that LAI and its member public instrumentalities are joined in a mutually beneficial relationship and in fact may be fairly said to form the type of symbiotic relationship between public and private entities which triggers constitutional scrutiny. *Id.*

We hold that Commonwealth action is present and that the district court accordingly did have jurisdiction under 28 U.S.C. § 1343(3).

## II.

◼ We turn then to the merits of plaintiffs' claim. Plaintiffs contend, and defendants admit, that plaintiffs were deprived of medals and prizes won at and denied future participation in the annual competitions as a consequence of an LAI regulation providing that persons not born in Puerto Rico who enter a member institution after reaching the age of twenty-one may not participate in the competitions. Plaintiffs further contend, and defendants contest, that such deprivation and denial is in violation of plaintiffs' right to equal protection under the Constitution and that they are entitled to relief pursuant to 42 U.S.C. § 1983.

The district court concluded that plaintiffs had failed to establish a claim under

---

8. This case does not present us with one of the most troublesome aspects of the NCAA decisions, *viz.*, that NCAA action cannot properly be characterized as the action of any one government. It is clear that if LAI action is governmental action, it is governmental action under color of the authority of the Commonwealth of Puerto Rico.

§ 1983. It reasoned that neither education broadly nor participation in intercollegiate athletics is a fundamental right for purposes of equal protection analysis. To this extent, we agree. It is of course established that education is not such a fundamental right. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 29–37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). And it surely follows that participation in intercollegiate athletics is similarly not so favored. *Albach v. Odle,* 531 F.2d 983, 984–85 (10th Cir. 1976). In addition, the record amply demonstrates that a substantial and rational basis does exist for the challenged regulation, to wit, the well-founded desire on the part of LAI to avoid the injection of professional athletes into the competitions it sponsors. If these were the only factors implicated in the present case, therefore, we would have little difficulty affirming the judgment below.

Nevertheless, the regulation before us is not a simple proscription of participation to all individuals who are over twenty-one when they enter a member institution. Nor does it purport to establish any criteria which are neutral between Puerto Ricans and non-Puerto Ricans for determining when an individual student athlete should be considered professional and denied participation. Quite to the contrary, the classification embodied in the regulation is drawn on stark alienage grounds, and the regulation on its face discriminates against persons who are not Puerto Rican. We agree with plaintiffs that the district court failed to appreciate the basic thrust of decisional law with respect to such classifications.

It is now familiar doctrine that the presence of either a "fundamental right" or a "suspect classification" is sufficient to invoke the stricter standard of equal protection scrutiny. *San Antonio School District v. Rodriguez, supra* 411 U.S. at 16–17, 93 S.Ct. 1278. It is equally settled that classifications based on alienage grounds fall into the latter of these categories. In *Examining Board v. Flores de Otero, supra,* the Supreme Court reiterated the applicable criteria in such cases in the context of a Puerto Rico ban on the private practice of civil engineering by aliens. The Court stated, 426 U.S. at 601–02, 96 S.Ct. at 2281:

In examining the validity of Puerto Rico's virtually complete ban on the private practice of civil engineering by aliens, we apply the standards of our recent decisions in *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Sugarman v. Dougall,* 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); and *In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). These cases establish that state classifications based on alienage are subject to "strict judicial scrutiny." *Graham v. Richardson,* 403 U.S., at 376, 91 S.Ct. at 1854. Statutes containing classifications of this kind will be upheld only if the State or Territory imposing them is able to satisfy the burden of demonstrating "that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary . . . to the accomplishment' of its purpose or the safeguarding of its interest." *In re Griffiths,* 413 U.S., at 721–722, 93 S.Ct., at 2855 (footnotes omitted). These principles are applicable to the Puerto Rico statute now under consideration.

Since the regulation here challenged discriminates on its face against non-Puerto Ricans, it is necessarily subject to the strict scrutiny standard set out in the above quote, and the district court erred in failing to apply that standard. *See Howard University v. NCAA, supra* at 222.[9]

---

9. Faced with an NCAA eligibility requirement which discriminated against foreign student-athletes, the *Howard University* court, citing *In re Griffiths* and *Graham v. Richardson,* both *supra,* concluded:

The rule clearly establishes an alienage classification, treating foreign student-athletes differently than American student-athletes, and thus must be subjected to close judicial scrutiny.

The court went on to conclude that the classification as drawn could not stand. 510 F.2d at 222.

Although it is perhaps doubtful whether the challenged regulation can withstand the strict standard we hold applicable, *see id.,* defendants are nonetheless entitled to attempt such a showing, a showing which was not necessitated under the view of the case taken by the district court. We accordingly remand this case to the district court for that purpose and for such other purposes as may be necessary to bring this litigation to a conclusion.

We emphasize that the constitutional difficulties which prompt our reversal arise by virtue of the regulation's facial command that non-Puerto Ricans be treated differently from Puerto Ricans. We do not in any manner impugn the desires of LAI officials to purge intercollegiate athletics in Puerto Rico of professionalism, nor do we in any way suggest that efforts to accomplish that result which are evenhanded between Puerto Ricans and non-Puerto Ricans will run afoul of the Constitution. *See Shelton v. NCAA,* 539 F.2d 1197 (9th Cir. 1976). But the Constitution does require that actions taken solely on alienage grounds cannot stand unless the standards set forth above are satisfied, and defendants admit that the actions here challenged were taken on the basis of a regulation which on its face so discriminates.

We intimate no view as to the relief to which plaintiffs may be entitled in the event they ultimately prevail.

The judgment appealed from is reversed. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*