### Hays WILLIAMS

v.

**George HAMILTON, in his capacity as Athletic Director of New England College and in his capacity as National Association of Intercollegiate Athletics (NAIA) District Five Eligibility Chairman; and National Association of Intercollegiate Athletics.**

**Civ. No. 80–459–D.**

United States District Court, D. New Hampshire.

Oct. 8, 1980.

---

Paul C. Semple, Concord, N. H., for plaintiff.

Martin L. Gross, Concord, N. H., for Hamilton.

Thomas D. Rath, Concord, N. H., for NAIA.

## OPINION AND ORDER

DEVINE, Chief Judge.

Plaintiff Hays Williams, a college undergraduate, transferred from Guilford College in Greensboro, North Carolina, to New England College ("NEC") in Henniker, New Hampshire, and was admitted to the sophomore class at NEC commencing in the 1980–81 academic year. Contending that certain eligibility rules for intercollegiate athletics promulgated by the defendant National Association of Intercollegiate Athletics ("NAIA") are unconstitutional, he has brought this civil rights action, 42 U.S.C. § 1983,[1] against NAIA and also against George Hamilton, who is the Athletic Director of NEC and the Eligibility Chairman of Division Five of NAIA. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3), (4), and the relief sought is declaratory, 28 U.S.C. §§ 2201, 2202, and injunctive in nature, Rule 65, Federal Rules of Civil Procedure.

Plaintiff initially sought a temporary restraining order, and the Court in turn attempted to advance matters by scheduling an early hearing for preliminary injunctive relief. However, defendant NAIA could not be served in time, and on the date scheduled for the initial hearing, September 23, 1980, counsel for plaintiff and for defendant Hamilton appeared, and the Court

---

1. 42 U.S.C. § 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

was advised that no objection would then be interposed to a temporary restraining order. Finding that irreparable harm was therefore threatened under all circumstances, the Court issued such order. The hearing on the preliminary injunction was rescheduled for Friday, October 3, 1980, at which time evidence was taken. The Court has reviewed such evidence together with the legal memos and other relevant documents on file.

The factual background of the litigation is relatively uncomplicated. Defendant NAIA is a voluntary association of 512 four–year colleges ranging in size from small (500) to moderate (1100), whose primary purpose as set forth in its constitution is "to promote the development of athletics as a sound part of the educational offerings of member institutions." (Defendants' Exhibit A, the NAIA Constitution, Article III, Section A, p. 7.) The member institutions of NAIA pay dues to the Association, which are scaled by enrollment. Among other things, NAIA sets standards for recruiting and eligibility, and it sponsors post–season national championships in various collegiate sports, including soccer.

NAIA is divided into several districts,[2] each of which is governed by a "District Executive Committee". Each district has voting representation at NAIA's Annual National Convention, at which time policy decisions are made. Also at the National Convention delegates vote for new members of the National Executive Committee, the overall governing body of NAIA.[3] (Defendants' Exhibit A, pp. 10, 12.)

Plaintiff Williams received a soccer scholarship of $250 per semester, or $500 per year, from Guilford College, which he entered in August of 1979. Although he developed low back problems which prevented him from participating in the sport, he nevertheless attended practices and traveled with the Guilford soccer team.

In the spring of 1980 plaintiff decided that he wished to transfer to a school closer to his parents' residence in New Jersey. Accordingly, he applied for and was granted admission to NEC. In June a new physician diagnosed plaintiff, discovered that his back problem was arthritic in nature, and prescribed medication which alleviated the problem. Plaintiff therefore contacted the soccer coach at NEC, who told him to report there on or about September 2, 1980, for the opening soccer practice.

Within a short time of his arrival at NEC, plaintiff was interviewed by defendant Hamilton, who required that he furnish in writing a statement of the circumstances of his transfer. Following review of the information procured from plaintiff, Hamilton advised him that he would be ineligible to compete in soccer at NEC for a period of sixteen weeks after his first residence there and that, although under exceptional circumstances an appeal could be filed by the institution in his behalf to defendant NAIA, such would not be here contemplated. The instant litigation ensued.

The equitable relief which the plaintiff herein seeks requires this Court to consider the factors of (1) the significance of the threat of irreparable harm to plaintiff if such relief is not granted; (2) the balance between such harm and the injury that injunctive relief would inflict on plaintiff; (3) the probability of the plaintiff's success on the merits; and (4) the public interest. *Grimard v. Carlston*, 567 F.2d 1171 (1st Cir. 1978); *National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819 (1st Cir. 1979).

The rule of which the plaintiff here complains states in pertinent part:

A student who has been previously identified with a 4 year college or university . . . who then transfers to a member college or university must be in residence for a period of 16 calendar weeks (112 calendar days) before being eligible for

---

**2.** New England College is one of twenty–six colleges located in District Five, which includes the New England states and certain Canadian provinces. (Defendants' Exhibit A, p. 76.)

**3.** The national Executive Committee is composed of the president, the first, second, third, and fourth vice–presidents, the two most recently retired presidents, and four additional members.

any intercollegiate competition in any NAIA sport which the previous 4 year institution sponsored during the student's attendance. If the student has previously attended a 4 year institution which sponsors a particular sport, the 16 calendar weeks residency requirement will apply to that sport regardless of whether the student competed or not in that sport in that institution.

(Defendants' Exhibit A, Article V, Eligibility, Section E, Transfer Residence Requirement, p. 33.)

NEC is also a member of the National Collegiate Athletic Association ("NCAA") which divides its member schools for purposes of competition into various divisions based on the desire of a given member school to participate in a given sport at such level. Accordingly, NEC for certain sports is competing at a higher division level and following NCAA rules, while in soccer, the sport here at issue, it competes in Division III, but follows the "more stringent" requirement of the NAIA rule above quoted. The NAIA witnesses contend that the residency requirement rule is necessary to prevent "pirating" and to also prevent "tramp athletes" from moving from institution to institution for the sole purpose of participating in a given sport.

■ Plaintiff's first argument is that he has been deprived of due process by the application of the residency eligibility requirement. Citing the so–called "NCAA cases",[4] plaintiff urges that the action of NAIA in promulgating and enforcing such an eligibility rule comprises "state action", and thus here meets a threshold requirement to the granting of relief under 42 U.S.C. § 1983.[5]

In *Rivas Tenorio v. Liga Athletica Interuniversitaria*, 554 F.2d 492 (1st Cir. 1977), the court had the occasion to analyze the factors upon which the NCAA cases (n. 4,

*supra*) found that state action existed for the purposes of jurisdiction. These were found to include the facts that (1) approximately 50 percent of NCAA member institutions were state or federally supported; (2) the vast majority of the capital provided NCAA came from public institutions; (3) the state instrumentalities were a dominant force in determining NCAA policy and in dictating NCAA actions; (4) the NCAA's regulation and supervision over intercollegiate athletics was extensive and represented an immeasurably valuable service for its member institutions; and (5) the NCAA negotiates television contracts in substantial sums which flow directly to participating schools, primarily the public universities. *Rivas, supra*, at 495.

Defendant argues that the NAIA cannot be analogized to the NCAA, in that the amount of state involvement in the former pales in comparison to the latter. An Affidavit submitted by defendant reveals that state–supported schools comprise 33% of NAIA's membership, and pay 37% of NAIA's total dues. The Executive Committee is composed of eleven persons, six from private schools and five from state schools. Of the six members of the National Eligibility Committee of the NAIA, four are from private schools and two are from state schools. If the state action question could be reduced to a mere numbers game in which a magic majority pushes the party into one category or the other, the solution to the problem would be easy, and defendant in this action would prevail. But as the First Circuit recognized in *Rivas*, the resolution of the state action question is not easy.

If the NCAA was composed of solely public institutions, clearly state action would be present. In contrast, if the NCAA had no public members, its actions would be private for constitutional purposes. Drawing the line as to the requisite quantum of public participation to

---

4. *Howard University v. NCAA*, 510 F.2d 213 (D.C.Cir.1975); *Parish v. NCAA*, 506 F.2d 1028 (5th Cir. 1975); *Associated Students, Inc. v. NCAA*, 493 F.2d 1251 (9th Cir. 1974).

5. It is well established that the "under color of state law" requirement in 42 U.S.C. § 1983 is equivalent to the constitutional state action required under the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 1157, n. 7, 16 L.Ed.2d 267 (1966).

invoke fourteenth amendment protections is a difficult task indeed. ...

*Rivas,* citing *Howard University* at 496. *See also Marlboro Corporation v. Association of Independent Colleges and Schools, Inc.,* 556 F.2d 78, at 79–80 (1st Cir. 1977). It is manifest that although the state schools do not constitute a majority of NAIA's membership, they nevertheless contribute substantially to NAIA's financial stability and its decisionmaking process. For this reason the Court finds and rules that plaintiff has made a sufficient showing of "state action" to allow this Court to exercise its jurisdiction over this matter.

However, although the Court herewith exercises jurisdiction, it must reject the plaintiff's contentions that his opportunity to participate in soccer at the intercollegiate level is a property right. It is true, as plaintiff suggests, that

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, at 577, 92 S.Ct. 2701, at 2709, 33 L.Ed.2d 548 (1972).

■ Plaintiff is here unable to establish that he has a legitimate claim of entitlement arising under state law; and admits that the New Hampshire courts have not determined that participation in intercollegiate sports competition constitutes a property right. The Court does not accept plaintiff's invitation to find that were the New Hampshire courts to rule on the question they would grant plaintiff a right to the protection of procedural due process. The more persuasive arguments are set forth in a line of recent cases which have found that the privilege of participating in intercollegiate sports competition is without such constitutional protection. *Parish v. NCAA,* 506 F.2d 1028, 1034 (5th Cir. 1975); *Denis J. O'Connell High School v. Virginia*

*High School,* 581 F.2d 81, 84 (4th Cir. 1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979); *Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152, 159–60 (5th Cir. 1980). Accordingly, plaintiff's due process claim is without merit.

■ Nor does plaintiff fare any better in his claim that he has been deprived of equal protection under the law by application of the eligibility residency requirements to him. Contrary to plaintiff's contentions, the class of which he is a member consists of the six to fifteen students who annually seek to transfer to NEC from other four–year institutions, and not all students who have not established an academic record at the institution including the entire freshman class, as well as junior–college transfer students. Where, as here, the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See, e. g., Parham v. Hughes,* 441 U.S. 347, 350–53, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979); *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Walsh v. Louisiana High School Athletic Association, supra,* at 160; *Rivas Tenorio v. Liga Athletica Interuniversitaria, supra,* at 496–97.

■ Presumably, freshmen enrolling in a four–year college have determined that this is the institution which they desire to attend for four years, and having satisfied the entrance admission requirements, they have defined themselves as intending to become integral parts of the institution. Similarly, transfers from junior colleges who meet the academic admission requirements must perforce attend a four–year college if they wish to earn a degree above that of Associate and indicate by enrollment in such four–year institution their desire to become integral parts thereof. Transfers from four–year institutions, albeit few in number as above indicated, pose a different problem, and the Court here finds and rules that the record before it amply demonstrates

that a substantial and rational basis does exist for the challenged regulation, to wit, the well–founded desire on the part of NAIA to avoid movement of "tramp athletes" interested in one sport from school to school in the fond hope that such athlete might be able to participate in post–season national championship competition or in the hope that he might be able to assist the team of the school to which he transfers to enter such competition. Of interest in the instant case is the plaintiff's testimony that he has a future desire to teach soccer, contrasted with the evidence present that to do so he need not actually participate in the sport but might take courses in the physical education department at NEC, an opportunity of which he was not yet availed himself.

For the reasons hereinabove set forth, the Court finds and rules that plaintiff lacks probability of success on the merits of the instant litigation and that such irreparable harm as he may perceive from being required to sit out this soccer season is outweighed by the balance between such harm and the injury that injunctive relief would inflict on the application of what the Court believes to be a perfectly reasonable rule by NAIA to its member institutions. Public interest accordingly requires that the Court deny the petition for preliminary injunction.

Parenthetically, the Court notes that certain practices of NAIA might well be improved, i. e., the six– to eight–week interval where an appeal is filed by a member institution as to the eligibility of a student might be reduced by use of such modern devices as telephone conference calls; and where, as here, the Athletic Director and the District Eligibility Chairman wear the same hat, a process providing for prompt appeal to a person in the geographical district other than a person holding such dual employment might be devised with profit to all concerned.

### ORDER

The Court finds and rules that the plaintiff, Hays Williams, is not entitled to pre-liminary injunctive relief herein, and the petition for preliminary injunction is herewith denied, and the temporary restraining order entered by this Court on September 23, 1980, and extended to the date of this decision in an oral order from the bench on October 3, 1980, is herewith dissolved. Plaintiff shall respond to the motion for summary judgment within ten days of the date hereof, filing such counter affidavits and memos as he desires and, in the absence of appeal, the Court will proceed to disposition of the defendants' summary judgment motion without further hearing.

SO ORDERED.