Hillsborough
No. 82-111

ROBERT H. DUFFLEY

v.

NEW HAMPSHIRE INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.

May 26, 1982

*Alexander J. Kalinski* and *Martin K. Glennon,* of Manchester, for the plaintiff.

*Gallagher, Callahan & Gartrell P.A.,* of Concord (*Steven J. McAuliffe*), for the defendant.

BROCK, J.  The issue in this case is whether the trial court properly dismissed the plaintiff's petition alleging that the defendant New Hampshire Interscholastic Athletic Association, Inc. improperly denied him eligibility to participate in interscholastic athletics during the second semester of the 1981–1982 school year.

The plaintiff filed a petition for writ of supersedeas in this court on March 15, 1982, requesting that the order of the Superior Court (*Goode,* J.) be stayed pending appeal. By order dated March 17, 1982, we vacated the trial court's order dismissing the plaintiff's petition and reinstated prior orders of that court granting the plaintiff temporary injunctive relief. Because we conclude that fundamental requisites of due process were not observed in proceedings conducted before the NHIAA in this matter, we hold that its decision denying the plaintiff's eligibility was unlawful and is therefore invalid.

■■ Paraphrasing words used by the United States Supreme Court, it can hardly be argued that high school students wishing to participate in interscholastic athletics shed all of their constitu-

tional rights at the entranceway to the New Hampshire Interscholastic Athletic Association. *See Tinker v. Des Moines School Dist.*, 393 U.S. 503, 506 (1969); *see also Rivas Tenorio v. Liga Atletica Interuniversitaria*, 554 F.2d 492, 494 (1st Cir. 1977) (holding that intercollegiate athletic association's actions constitute governmental action for purposes of the Constitution and 42 U.S.C. § 1983). We have only recently stated that a "fundamental requisite of due process is the right to be heard at a meaningful time and in a meaningful manner. . . . The right to be heard is grounded in the need for confrontation when adjudicative rights [or facts] are in dispute." *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 758, 423 A.2d 603, 606 (1980) (citations omitted).

Having these general principles in mind, we proceed to a summary of the facts involved in the present dispute and a history of proceedings held before the NHIAA and the superior court, in order that their application to this case may be better understood.

The plaintiff, Robert Duffley, a nineteen-year-old senior, has been an honor student and is a member of the basketball team at Trinity High School in Manchester. After attending a portion of the first semester of the 1978–1979 academic year as a sophomore, he became ill and, upon orders of his doctor, withdrew from school for the remainder of the school year. The plaintiff did not participate in athletics and received no academic credit for the time he was in attendance that year. He began his sophomore year anew in the fall of 1979, and thereafter participated in school athletics.

Because Trinity High School is a member of the NHIAA, a corporation that sponsors, administers, and supervises the conduct of interscholastic athletic competition for most public and private schools in New Hampshire, its principal, Donald Desmarais, anticipated, and correctly so, that a question concerning the plaintiff's eligibility to participate in interscholastic athletics during his senior year, 1981–1982, would arise.

The defendant's by-laws, to the extent that they are pertinent to the case before us, provide:

"Article II, Section 12.

On any question of eligibility a Principal shall have the right to ask the Executive Secretary *for a ruling*. All such requests must come from the Principal of the school.

. . . .

Article II, Section 4: Semester Rule

(a) No pupil is eligible for competition (whether the stu-

dent competes or not) in interscholastic athletics more than eight (8) consecutive semesters (1461 days or 365 x 4 plus 1) beyond the eighth grade.

(b) A semester shall be considered to open with the regular hour for the opening classes on the opening day of the semester and any pupil who has *twenty (20) days of membership* shall be considered as having been in attendance that semester.

. . . .

Article II, Section 6: *Deviations* from Eligibility Rules.

Any deviation from the NHIAA Eligibility Rules shall be made only with the consent of the Eligibility Committee of the New Hampshire Interscholastic Athletic Association. *The Eligibility Committee,* in considering deviations from present rules, shall consider the following criteria in determining whether or not to allow the same:

1. The merits of the individual case.
2. Whether or not the granting of the deviation from the rule would be inconsistent with the purposes of the rule.
3. *Whether or not the individual concerned caused or contributed to cause the existence of the factors which result in ineligibility."*

(Emphasis added.)

By letter dated May 13, 1981, the principal, relying upon the provisions of Article II, Section 12, requested a ruling from the executive secretary of the NHIAA that the plaintiff be granted athletic eligibility for his senior year. In his request, the principal referred to Article II, Section 4: semester rule. In response, the executive secretary indicated that additional information was needed before any decision could be rendered in the case. Specifically, he requested the plaintiff's grades while attending Trinity High School, that a form be filled out, and *"the exact termination date from Trinity during the 1978–1979 school year."* (Emphasis added.) These requests were complied with in June, and on July 9, 1981, the executive secretary notified the principal that "[he] would respectfully request that the student be given one additional semester of athletic eligibility. *This opinion is supported by both the school and medical evidence you have forwarded to us."*

(Emphasis added.) No reason was given for denial of eligibility for the second requested semester.

The principal appealed the executive secretary's decision to the Eligibility Committee, as provided by the defendant's rules. Without a hearing, the committee denied the appeal on August 18, 1981, stating in its minutes:

> "This student was *in attendance at school September–November 30* at which time he withdrew. . . . After review of facts submitted which indicated correspondence from father, medical doctor and principle [sic] it was Voted to deny appeal on basis of fact student was granted additional semester based upon illness during 1978–1979 school year."

(Emphasis added.)

Next, the principal appealed to the NHIAA executive council, which considered the matter at its meeting on August 10, 1981, with the principal alone being present to represent the plaintiff's position. The minutes of this meeting state:

> "*ELIGIBILITY CASE of Robert Duffley of Trinity High School*
>
> Don Desmarais Principal of Trinity High School appealed decisions of the Executive Director and the NHIAA eligibility committee that Robert Duffley a student *who lost a semester of school due to illness, be granted a full year of athletic eligibility and not just one additional semester.* Mr. Desmarais made *available to the Council all the records* of the case and requested a support of his appeal. A motion was made to accept the appeal and that the student in question be given a full year of eligibility. The motion failed to pass by a 4–6 vote."

(Emphasis added.) By letter dated August 21, 1981, the principal was advised, without explanation, that the appeal was denied.

Because the Trinity High School principal had all along been requesting two additional semesters of athletic eligibility for the plaintiff because he had not received academic credit for, and had lost, two semesters of school, not one as stated in the minutes of the executive council's meeting, due to illness, the plaintiff understandably sought legal advice concerning the effect that the defendant's apparent misunderstanding of the facts might have on his legal rights. In September, counsel for the plaintiff requested that a

further hearing be granted to his client and that the council reconsider its August 10, 1981 decision. Because its rules require that only principals of member schools—not the student himself—may pursue eligibility questions before the NHIAA, it was not until the principal personally requested a rehearing that the matter was put on the council's agenda for consideration on December 17, 1981.

On that date, the plaintiff's father, his attorneys, and the principal were present. The latter was allowed to present some "additional information," and Attorney Kalinski addressed the council concerning the plaintiff's rights, at which point the council went into executive session for twenty-five minutes, reappeared, and unanimously voted to grant a rehearing. The council, however, *immediately* denied the appeal, by a vote of 12 to 1. No reasons were given.

On December 29, 1981, the plaintiff filed a petition in the superior court, seeking equitable and injunctive relief. The plaintiff alleged, *inter alia*, violation of his due process rights under the fourteenth amendment of the United States Constitution, and that the defendant had acted arbitrarily and capriciously in arriving at its decision, which was unreasonable and unlawful.

After an evidentiary hearing held on January 25, 1982, the Superior Court (*Wyman*, J.) temporarily enjoined the NHIAA from enforcing its decision denying the plaintiff the right to participate in interscholastic athletics during the second semester of the 1981–1982 school year, pending a hearing on the merits. On February 11, 1982, the defendant filed a motion for an early hearing on the merits, to which the plaintiff objected. A hearing on the motion was held on Monday, March 8, 1982, and in spite of the plaintiff's counsel's representations that interrogatories previously served on the defendant and other discovery were still incomplete, the Court (*Goode*, J.) granted the defendant's motion and ordered that a hearing on the merits be held on March 12, 1982.

On the eve of the hearing on the merits, the defendant furnished the plaintiff with answers to most of the interrogatories propounded to it. In response to specific interrogatories, the defendant, through its executive secretary, revealed for the first time that the reason it had denied the plaintiff second-semester eligibility was that it "entertained serious and disturbing doubts about the supposed medical justification for Robert's withdrawal," and suspected "that Robert suffered little more than a severe cold in 1978," and that it "deferred, reluctantly, to [the doctor's] stated medical opinions" in granting even one additional semester of eligibility.

In addition, the defendant for the first time declared that its

decision granting plaintiff one additional semester of eligibility rather than two was made solely under its deviation rule (Article II, Section 6) without reference to paragraph (b) of its semester rule (Article II, Section 4). The deviation rule provides that the Eligibility Committee of the NHIAA shall consent to any deviation from the NHIAA eligibility rules after considering the merits of the individual case, whether the deviation would be inconsistent with the purposes of the rule, and whether the individual concerned contributed to his ineligibility. (Article II, Section 6.) In response to the interrogatory inquiring whether the NHIAA considered Section 4 (b) of its semester rule, which provides that any pupil who has more than twenty days of membership shall be considered as having been in attendance that semester, in reaching its decision, the defendant responded: "Section 4 (b) is applicable in transfer cases, which is not believed to be an issue here."

Numerous other issues could undoubtedly be raised concerning the conduct of proceedings in this matter, both before the NHIAA and the superior court, if this court were to allow the plaintiff's appeal on the merits of the case to proceed in due course. Such a course is unnecessary because we are able to determine the dispute between the parties on the record and on an issue presently before us.

The plaintiff claims that his constitutional rights to due process were violated by the administrative procedures employed by the NHIAA. The defendant, on the other hand, argues that the plaintiff is not entitled to due process because he has "no legally protected right to play basketball" and that, in any event, "[T]his young man has had a full measure of due process."

■ It is well-settled that in order for one to successfully assert that he is entitled to the safeguards of procedural due process, he must establish: (1) State or government action, and (2) a protected liberty or property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Wheeler v. State*, 115 N.H. 347, 351–52, 341 A.2d 777, 781 (1975).

■ The defendant has not argued strenuously that its administration of the conduct of interscholastic athletic activities for public and private schools throughout New Hampshire is not State or governmental action within the meaning of the fourteenth amendment to the United States Constitution, or of the due process clause of the New Hampshire Constitution. N.H. CONST. pt. 1, art. 15. Indeed, our canvass of the cases which have considered this issue indicates that a substantial majority of courts have held that

the activities of interscholastic athletic associations or similar organizations constitute State or governmental action. *Haas v. South Bend Community School Corp.*, 259 Ind. 515, 520, 289 N.E.2d 495, 498 (1972); *see Rivas Tenorio v. Liga Atletica Interuniversitaria*, 554 F.2d at 494; *Barnhorst v. Mo. State High Sch. Activities Ass'n*, 504 F. Supp. 449, 457 (W.D. Mo. 1980). We hold that the activities of the NHIAA in sponsoring, administering, regulating and supervising interscholastic athletics in New Hampshire constitute State action within the meaning of the due process clause of the United States Constitution and our State constitution.

Turning to a consideration of whether the plaintiff has a liberty or property interest in participating in interscholastic athletics, we note that this issue cannot simply be disposed of by stating that the plaintiff has no fundamental constitutional right to participate in interscholastic athletics. *Cf. Rivas Tenorio v. Liga Atletica Interuniversitaria*, 554 F.2d at 497.

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules—or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). The United States Supreme Court has also recently stated:

> "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'"

*Logan v. Zimmerman Brush Co.*, 102 S.Ct. 1148, 1158 (1982) (citations omitted.)

Thus, the question to be answered in this case is: Does the person seeking the benefits of procedural due process under the fourteenth amendment to the United States Constitution or under the due process clause of our State Constitution, N.H. CONST. pt. 1, art. 15, have a protected property interest in participating in high school athletic competition? In making this determination, we rely upon not only statutory and regulatory pronouncements concerning the role of athletics in our educational process, but also a common sense recognition of the benefits, both educational and economic,

that frequently accrue to those high school students who participate in interscholastic athletic competition.

Regulations promulgated by the State department of education state that: "Pupil activities, including athletics, should be considered a part of the curriculum." *Minimum Standards and Recommended Practices For New Hampshire High Schools, Grades 9–12*, New Hampshire State Department of Education, Concord, New Hampshire (effective September, 1963), at p. 18. In addition, an announced goal of the NHIAA itself is ". . . to establish the *state athletic program* as an integral part of the entire school program," it being the view of those who founded the organization "that athletics, properly directed and administered from the *state* viewpoint, have a unique contribution to make to the educational program of the school." *Handbook of: N.H.I.A.A.*, 1976–77, 23rd Edition, at p. 6. *See also* RSA 189:1-a, 189:1 (emphasis added).

■ It is apparent that interscholastic athletics are considered an integral and important element of the educational process in New Hampshire. It follows that the right to participate in them at least rises above that of a mere privilege. Recognizing this, and the stark fact that a student's ability to attend college and further his education may, in many instances, hinge upon his athletic ability and athletic scholarships, we hold that the right of a student to participate in interscholastic athletics is one that is entitled to the protections of procedural due process under pt. 1, art. 15 of our State Constitution. *Contra, Williams v. Hamilton*, 497 F. Supp. 641, 645 (D.N.H. 1980).

■■ Having concluded that the plaintiff is entitled to procedural due process in proceedings before the NHIAA, we next consider what procedures are due. This court has stated that "[t]heir form depends upon a balancing of the conflicting interests in which the individual's need for procedural safeguards is weighed against the governmental interest in summary or informal action." *Wheeler v. State*, 115 N.H. at 352, 341 A.2d at 781; *see also Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970). The minimum procedures required in the context of this case are: notice and an opportunity to be heard. *Armstrong v. Manso*, 380 U.S. 545, 551–52 (1965). Of course, the requirements of due process vary with the circumstances and interests involved in a particular case, *Kelley v. Metropolitan County Bd. of Ed. of Nashville, Etc.*, 293 F. Supp. 485, 492 (M.D. Tenn. 1968), but it cannot reasonably be argued that the NHIAA must adopt and follow the formal rules required in a judicial proceeding.

In the context of this case, the principal reason for requiring procedural due process is to make sure that the facts upon which the NHIAA relied in denying the plaintiff an additional semester of basketball eligibility were correctly arrived at, and that its decision was otherwise reasonable. Where, as here, the hearing in the trial court is not de novo in nature, and the trial court cannot substitute its conclusions of fact for those of the NHIAA, the procedures employed must furnish a basis for meaningful judicial review.

In this case, therefore, due process requires, in addition to the traditional requirements of notice and hearing, that the NHIAA specifically referring to its rules make findings of fact based upon evidence properly before it, supporting its decision. *See Wheeler v. State*, 115 N.H. at 352, 341 A.2d at 781.

In concluding as we do that the plaintiff's rights to procedural due process were violated in this matter, we need not further examine the proceedings before the NHIAA. It is sufficient to observe that throughout these apparently pro-forma proceedings the defendant found no facts and gave no reasons for its decision denying the plaintiff eligibility to participate in interscholastic athletics during the *second* semester of the 1981–1982 school year.

In view of the fact that the NHIAA, in its letter of July 9, 1981, had expressed its approval of the medical evidence presented in support of the plaintiff's request for two additional semesters of eligibility, and that the minutes of the NHIAA proceedings strongly suggested that the defendant had denied eligibility for one semester under its interpretation of the semester rule of the NHIAA bylaws, Art. II, Sec. 4(b), on the ground that the plaintiff had been "in membership" (presumably "in attendance") at Trinity High School for more than 20 days during the Fall of 1978, it is not surprising that the plaintiff believed that the denial was based on that reason. It was not until he received the defendant's answers to the interrogatories on the day before the "hearing on the merits" in the superior court that he learned that it was the NHIAA's position that Article II, Section 4(b) did not apply to his case, and that the reason they had denied him second semester eligibility was that they did not believe the medical evidence he had offered in support of his request.

This matter is remanded to the superior court for disposition consistent with this opinion.

*Remanded.*

BATCHELDER, J., dissented; BOÏS, J., dissented without opinion; the others concurred.

BATCHELDER, J., dissenting: The majority, recognizing that the conduct of the affairs of the NHIAA constitutes "state action," takes a further step which I am not prepared to take at this time. It attaches a constitutionally protected property interest to participate in school athletic programs. The possibility of athletic scholarships does not alter such an interest. The Pennsylvania court, facing a similar situation as presented here, canvassed the law and found that "an overwhelming majority of the [cases] have rejected the notion that participation in athletics is a property right." *Adamek v. Pa. Interscholastic Athletic Ass'n*, 426 A.2d 1206, 1207 (Pa. Commw. Ct. 1981); *see also* cases cited in *id.* n.1. Earlier, another court addressed a similar question and set forth a rationale that expresses the possible consequences of the action which the court takes today.

> "The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process."

*Dallan v. Cumberland Valley School District*, 391 F. Supp. 358, 361 (M.D. Pa. 1975).