Louis GIANNATTASIO and Michael
Giannattasio, Plaintiffs,

v.

STAMFORD YOUTH HOCKEY ASSOCI-
ATION, INC., Frank L. Carlucci, Wil-
liam Malloy, James Malloy, William J.
Arnone, and Bruno Giordano, Defend-
ants.

Civ. No. B–85–438(WWE).

United States District Court,
D. Connecticut.

Sept. 17, 1985.

Philip M. French, Stamford, Conn., for plaintiffs.

Stamford Youth Hockey Association, Inc., Frank L. Carlucci, William Malloy, James Malloy, William Arnone, Charles A. DeLuca, Stamford, Conn., for defendants.

Eric L. Reinken, Asst. Corp. Counsel, City of Stamford Law Dept., Stamford Conn., for defendant Bruno Giordano.

## RULING ON DEFENDANTS' MOTIONS TO DISMISS

EGINTON, District Judge.

Defendants, Stamford Youth Hockey Association, Inc. (hereinafter "SYHA"), Frank L. Carlucci, William Malloy, James Malloy, William J. Arnone and Bruno Giordano have moved the court to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction over the subject matter and Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs claim that this case arises under 42 U.S.C. Sec. 1983 [1] of the Civil Rights Act and that jurisdiction is based upon 28 U.S.C. Sec. 1343 and 28 U.S.C. Sec. 1331. Plaintiffs further claim injunctive and declaratory relief pursuant to 28 U.S.C. Sec. 2201 and 2202 as authorized by 42 U.S.C. Sec. 1983.

Plaintiffs are Michael and Louis Giannattasio who are suing both in their own right and as best friends in the names and rights of their minor sons, Michael, Jr. and Louis, Jr. Defendant SYHA is a non-stock corporation of the State of Connecticut. Defendant Carlucci is President of SYHA, a Director of SYHA and a member of the Rules and Discipline Committee of SYHA. Defendant William Malloy is Vice-President, a Director and a member of the Rules and Discipline Committee of SYHA. Defendant James Malloy is Secretary, a Director and a member of the Rules and Discipline Committee of SYHA. Defendant Arnone is Treasurer, a Director and a member of the Rules and Discipline Committee of SYHA. Defendant Giordano is Superintendent of the Board of Recreation of the City of Stamford.

The facts of this case as enunciated in the plaintiffs' complaint establish that this controversy involves the suspension of the plaintiffs from all participation in the SYHA programs due to a series of altercations between the plaintiffs and the SYHA coaches. The defendants have moved to dismiss the complaint, asserting that the court has no jurisdiction in that the plaintiffs have failed to show the existence of either state action or a substantial federal question.

## DISCUSSION

State action is the jurisdictional cornerstone to the granting of relief under 42 U.S.C. Sec. 1983.[2] State action is at its core a unitary concept. Under this concept the only issue is whether sufficient state contacts do, or do not, exist. If the court finds a sufficient quantum of state connections to a particular activity, then that activity will be subject to the strictures of the Fourteenth Amendment, even though performed by a private party. Several tests have been devised by the Supreme Court to determine whether a defendant's actions constitute "state" action of a type regulated by the Fourteenth Amendment.

The "public function" doctrine holds that when private persons are en-

---

**1.** 42 U.S.C. Sec. 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** It is well established that the "under color of state law" requirement in 42 U.S.C. Sec. 1983 is equivalent to the constitutional state action required under the Fourteenth Amendment. *United States v. Price,* 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 1157, n. 7, 16 L.Ed.2d 267 (1966).

gaged in the exercise of governmental functions their activities are subject to similar constitutional restrictions. In other words, the state cannot free itself from the limitations of the Constitution in the operation of its governmental functions merely by delegating certain functions to otherwise private individuals. See, e.g., *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) (electoral process public function); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (same); *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (corporation which wholly owned and operated town served public function). The public function concept has, however, been very narrowly construed. In four recent Supreme Court decisions it has been held that the function must be one which has traditionally been *exclusively* the domain of the state. "The required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'" *Blum v. Yaretsky,* 457 U.S. 991, 1005, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (quoting *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). This exclusivity requirement was not met by a privately-owned utility licensed and regulated by the state, *Jackson;* a warehouseman's sale regulated by state statute, *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); a private school which received most of its funding from state sources, *Rendell-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1981); and a nursing home funded through state monies, *Blum.* The majorities of *Jackson* and *Blum* seem to impose still another requirement for application of the public function doctrine: that the activity be one which the state is *required* to provide by statute or by state constitution. *Jackson,* 419 U.S. at 353, 95 S.Ct. at 454 ("But while the Pennsylvania statute imposes an obligation to furnish service on regulated utilities, it imposes no such obligation on the State."); *Blum,* 457 U.S. at 1011, 102 S.Ct. at 2789 ("The state constitutional provisions ... do no more than au-

thorize the legislature to provide funds for the care of the needy.... They do not mandate the provision of any particular care.... [The medicaid statute] does not require that the States provide the services themselves."). Thus no private sector agency should be subject to constitutional limitations of its autonomy unless it performs an exclusive governmental function, non-discretionary in nature, and is taking action under the direction of statutory or constitutional authority. Analyzed in light of these principles, plaintiffs' assertions of state action cannot be maintained. It is beyond dispute that the operation of a youth hockey organization is not a delegated governmental function. Further, such an organization is not mandated by the City Charter of Stamford. Defendants' actions do not constitute state action under the public function doctrine.

■ The second general test of state action doctrine relates not to the type of activity carried out by the private actor, but to the conduct of the government. If the government is sufficiently involved in the private actor's conduct, or encourages that conduct or benefits from it, the private party's acts will be deemed state action and subject to constitutional review. A common denomination of this second test is the "state entanglement" or "state nexus" theory of state action. *Huff v. Notre Dame High School of West Haven,* 456 F.Supp. 1145, 1147 (D.Conn.1978) ("The 'state entanglement' theory provides that 'state action' is present when the state is entangled with the operations of a private enterprise."). One way in which the state can become responsible for the conduct of a private party is by commanding or enforcing that conduct. See, e.g. *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) (judicial enforcement of a racially restrictive covenant would constitute state action and would violate the Fourteenth Amendment). The City of Stamford does not participate in the decision-making process of the SYHA and the decision to suspend the plaintiffs from the SYHA was made entirely by the Rules and Discipline

Committee of the Association. Defendants' Memorandum of Law in Support of Motion to Dismiss, Affidavit of William Malloy, (Exhibit "A"), at paragraphs 7, 23. There is quite clearly no type of *Shelley* -type commandment or enforcement in the present case.

State action will be found if the state encourages the private party to act in a manner violative of the Fourteenth Amendment. In *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967), the Supreme Court found state action where California voters amended their constitution to prohibit the government from interfering with any private individual's right to discriminate in the sale or lease of residential real estate. The Court held that the amendment encouraged private discrimination. In this instance the City of Stamford took no action whatsoever in the suspension of the plaintiffs from the SYHA. SYHA received no guidance or recommendations from the City concerning its conduct. The suspensions were the decision of the Rule and Discipline Committee acting autonomously. Affidavit of William Malloy at paragraphs 7, 16, 18. The plaintiffs find no support in the *Reitman* decision for their assertions of state action.

■ Where the private actor and government can be said to be in a "symbiotic relationship" the private actor will be subject to the Fourteenth Amendment constraints. The classic symbiotic relationship was found in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), where the Supreme Court held that a privately owned restaurant which leased space in a government parking facility could not refuse service to members of racial minorities. The Court applied a totality of the circumstances test to the contacts between the government and the private actor. While there was no single factor which indicated the presence of state action, under the totality test the restaurant's activities were subjected to constitutional review. Plaintiffs cannot succeed in their allegations of a *Burton* -type relationship between the City of Stamford and SYHA. Firstly, the propriety of using this test is limited for the most part to cases involving racial discrimination. *Arredondo v. Laredo Municipal Transit System,* 581 F.Supp. 868, 871 (S.D. Texas 1984) ("[T]he key to *Burton* was the fact that the state was profiting financially as a result of the racial discrimination of which that plaintiff complained."); *Lubin v. Crittenden Hospital Association,* 713 F.2d 414, 416 (8th Cir.1983) ("Use of the symbiotic relationship test is limited generally to cases involving racial discrimination."); *Briscoe v. Bock,* 540 F.2d 392, 396 n. 3 (8th Cir.1976). However, even if *Burton* were the appropriate test, the SYHA cannot be said to have "so far insinuated itself into a position of interdependence" with the City of Stamford "that it must be recognized as a joint participant in the challenged activity." *Burton,* 365 U.S. at 725, 81 S.Ct. at 862. SYHA is not an agency, department or association of the City of Stamford nor does the City provide any funding to the SYHA. Defendant Giordano's Memorandum of Law in Support of Motion to Dismiss, Affidavit of Bruno Giordano, (Exhibit A), at paragraphs 4, 9. The City's only involvement with the SYHA is that the SYHA uses the City's ice skating rink and is given a twenty per cent reduction in hourly rate. Affidavit, William Malloy, at paragraph 19. The City also permits all associations and groups, public and private, to skate at a reduced rate at the City's skating rink. Affidavit, Bruno Giordano, at paragraph 13. The City does not supervise, oversee or regulate the SYHA, does not participate in any of the SYHA decision making processes or have any representation on the Board of SYHA Directors. Affidavit, William Malloy, at paragraphs 6–9.

Thus, under all traditional state action tests the ultimate issue of determining whether these defendants are subject to suit must be answered in the negative; the alleged infringements of plaintiffs' federal rights are not fairly attributable to any form of state action. A review of the suspensions ordered by SYHA is therefore not subject to the jurisdiction of this court.

Even if the plaintiffs could have surmounted this jurisdictional barrier the federal court still could not redress their grievance. For sake of judicial economy the court will briefly explain its reasoning.

Plaintiffs assert that the defendants violated their procedural and substantive due process rights and violated their rights to equal protection under the Fourteenth Amendment. The court will discuss each assertion in turn.

■ A primary determination which must be made in a case such as this is whether the plaintiff has been deprived of an interest encompassed by the Fourteenth Amendment's protection of liberty and property. "... [T]he range of interests protected by procedural due process is not infinite." *Board of Regents v. Roth*, 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). One must look to the nature of the interest at stake. In the present case the court finds persuasive arguments set forth in a line of cases which have found that the privilege of participating in intercollegiate and interscholastic sports competition is without constitutional protection. See, e.g., *Davenport v. Randolph County Board of Education*, 730 F.2d 1395 (11th Cir.1984); *Walsh v. Louisiana High School Athletic Association*, 616 F.2d 152 (5th Cir.1980); *Parish v. N.C. A.A.*, 506 F.2d 1028 (5th Cir.1975); *Williams v. Hamilton*, 497 F.Supp. 641 (D.N.H.1980). As the Fifth Circuit succinctly stated while expressly reaffirming its holding in *Mitchell v. Louisiana High School Athletic Association*, 430 F.2d 1155, 1158 (5th Cir.1970):

> The due process clause of the fourteenth amendment extends constitutional protection to those fundamental aspects of life, liberty, and property that rise to the level of a 'legitimate claim of entitlement' but does not protect lesser interests or 'mere expectations.' (Citations omitted.) *A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement.*

*Walsh*, 616 F.2d at 159 (emphasis added). Plaintiffs stand in no different light from the athletes in these cases. Indeed, their position is likely to be more tenuous. Participation in interscholastic athletics on a high school or college level often holds open future possibilities of both scholarships and professional athletic careers. If the privilege of participation on such levels is not a property interest rising to a level of due process protection, then it is clear that to play in a youth hockey association is likewise unprotected. Accordingly, plaintiffs' due process claim is without merit.

■ The plaintiffs fare no better in their claim that they have been deprived of equal protection under the law based upon the suspension being of an entire, and therefore inherently suspect, class composed of members of each "Giannattasio family". Plaintiffs' Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction, at 6. Plaintiff cites no authority for this proposition nor has this court's research uncovered any. The purposes behind the Fourteenth Amendment would indicate that only laws classifying individuals on the basis of either their status as a member of a racial minority, their national origin, or their lack of U.S. citizenship are viewed as suspect, worthy of the most strict judicial scrutiny. Where, however, as here, the classification created by the suspension neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires only that the classification be rationally related to a legitimate state interest. See, e.g. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976). The classification in the instant case meets this standard. The plaintiffs were suspended from the SYHA following a verbal and physical altercation between the plaintiffs and the SYHA coaches. Plaintiffs were put on notice by the Handbook of the SYHA that the Rules and Discipline Committee had the authority to evaluate on and off ice conduct by spectators, players and/or coaches that was

considered detrimental to the League. The SYHA has a legitimate interest in promoting sportsmanship, positive group experiences and camaraderie among its young players. It has a further interest in its legitimate expectation that the parents of the players will serve as positive role models which will benefit all program participants. The disciplinary rules therefore adopted by the SYHA, together with the classification that results from their enforcement, are rationally and logically related to the SYHA's valid and legitimate interest. The plaintiffs' equal protection argument must therefore fail.

## ORDER

The court finds that the plaintiffs are not entitled to relief herein. The defendants' Motions to Dismiss for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief could be granted are hereby GRANTED.