Lauriat, J.
Plaintiff Robert A. Granara (“Granara”) seeks a preliminary injunction enjoining the defendant trustees and officials of the University of Massachusetts (“University”) from preventing Granara from practicing and playing with the University of Massachusetts/Dartmouth (“UMass/Dartmouth”) ice hockey team. Granara had been prohibited from participating in the hockey team’s practices under the University’s code of conduct for student athletes at least until the disciplinary charges filed against him and four other male students by a female student at UMass/Dartmouth have been resolved. For the following reasons, the plaintiffs motion for preliminary injunction is DENIED.
BACKGROUND
A female undergraduate, Katherine O’Brien (“O’Brien”), alleges that she was sexually assaulted by several male students on May 4, 1995, culminating in an alleged rape by one male student. O’Brien does not allege that Granara was the individual who had sex with her. All parties allegedly involved were students at UMass/Dartmouth in the spring of 1995.
Criminal charges were brought against all of the male students allegedly involved in the sexual assault, including Granara. Ultimately, the District Attorney elected to dismiss the charges against all of the male students. O’Brien, however, also filed disciplinary charges with the University against Granara and certain other students who were purportedly present at the time of the sexual assault.
Disciplinary rules for students at UMass/Dart-mouth are governed by the UMass/Dartmouth Code of Student Conduct, Alcohol and Drug Policy, and Student Judicial Code. After disciplinary charges are *522 filed against a student, he or she is entitled to a “preliminary meeting” with a member of the UMass/Dartmouth administration to discuss the charges against the student. A student is then given the option of summary disposition of the charges against him or her, or a hearing before a student disciplinary hearing.
Granara was notified of the disciplinary charges against him on August 15,1995. In that correspondence, a preliminary meeting was set for August 23, 1995. Due to the pending criminal charges and at the request of Granara, the preliminary meeting was postponed until August 30, 1995 and at the same time the date for the hearing on the charges was set for September 6, 1995. On August 29, again at the request of Granara, the University granted further postponement of the preliminary meeting until September 20, 1995.
In a letter dated September 8, 1995, the University informed Granara that he would be prohibited from practicing or playing ice hockey for UMass/Dartmouth so long as the disciplinary charges were outstanding.
Granara and the University held the preliminary meeting on September 20, 1995. At that meeting, Granara elected in writing to have a hearing before a student disciplinary board. Granara was informed that the hearing was scheduled for September 27, 1995. On September 26, 1995, Granara requested by phone and received from the University a postponement of the hearing scheduled for the following day. The hearing was rescheduled for November 6, 1995.
The UMass/Dartmouth ice hockey team began practicing for the upcoming season on October 16, 1995. Because there was no resolution of the charges against Granara as of yet, he was not permitted to attend the practice.
On October 16, 1995, Granara filed a complaint against O’Brien and the University. That afternoon, Granara appeared before this court seeking a temporary restraining order. Granara’s request was denied.
Subsequently, the hearing on the disciplinary charges against Granara was rescheduled by the University for October 30, 1995. Under the rules and regulations of UMass/Dartmouth, a disposition must be entered with respect to the charges within five days of the disciplinary hearing. Assuming that the board does not impose its own restrictions on Granara’s ability to play ice hockey, as it is allowed to do under current regulations, both parties have stipulated in open court that Granara will be allowed to resume playing hockey with the UMass/Dartmouth team as soon as a decision is made by the hearing board even in the event of an appeal by O’Brien.
The parties appeared before the court on October 23, 1995 on Granara’s motion for preliminary injunction. The scope of the injunction sought was an order to enjoin the University from preventing Granara from practicing with the UMass/Dartmouth team pending the hearing on October 30, 1995 and its resolution within five days thereafter.
DISCUSSION
“The issuance of a preliminary injunction generally rests within the sound discretion of the Judge, after a combined evaluation of the moving party’s likelihood of success on the merits, its claim of injury, and finally a balancing of the competing harms to each party.” General Accident Ins. Co. of America v. Bank of New England-West, N.A., 403 Mass. 473, 475 (1988), citing Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 615 (1980). “When the dispute is not between private parties, however, the court should also consider the risk of harm to the public interest.” Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).[1]
A preliminary injunction is a drastic remedy that the court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Charles Wright & Arthur Miller, 11 Federal Practice & Procedure, ¶2948 (1973). If the moving party can demonstrate that an injunction is necessary to prevent irreparable harm to it and that granting an injunction poses no substantial risk of harm to the opposing party, a substantial possibility of success on tire merits warrants issuing the injunction. Packaging Industries, 380 Mass. at 617 n.12.
Granara’s sole claim against the University is that it has deprived him of due process by excluding him from practicing with the UMass/Dartmouth ice hockey team. When an alleged deprivation of a constitutional right is involved, typically no further showing of irreparable injury is necessary.[2] Matz v. DuBois, Civil No. 95- 1227-E (Suffolk Super.Ct. Mar. 14, 1995) (Lauriat, J.), citing Wright & Miller, 11 Federal Practice & Procedure, ¶2948. However, the facts upon which the plaintiff bases the right to relief must appear with substantial clarity so that the court can weigh and determine the probability of success before the mere allegation of the denial of constitutional rights will suffice to show irreparable harm. Brass v. Hoberman, 295 F.Supp. 358, 361 (S.D. N.Y. 1968). See also Packaging Industries, 380 Mass. at 617 (indicating that the risk of irreparable harm must always be considered “in light of the [moving] party’s chance of success on the merits”).
The facts in the record presently before the court in this case do not show that Granara has a likelihood of succeeding on the merits of his claim against the University. Due process mandates that “in any proceeding to be accorded finality, notice must be given that is reasonably calculated to apprise an interested party of the proceeding and to afford him an opportunity to present his case." LaPointe v. License Board of Worcester, 389 Mass. 454, 458 (1983). However, the procedural protections of due process apply only if there is a palpable liberty or property interest at stake. O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 135 (1993).
In determining whether an alleged deprivation of due process is “a protected entitlement, we look first *523 to Federal due process and then to State law.” Id. at 135-36. In order to have a protected property interest, a person “must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 747 (1993), quoting Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).
Therefore, the threshold question is whether Granara has a constitutionally protected interest in practicing with the University’s interscholastic ice hockey team, or perhaps even in his potential future professional career. The court finds no basis for recognizing a due process mandated property right on either basis.
As has been the holding in the great majority of those jurisdictions that have considered the issue, the court concludes that a student’s interest in taking part in interscholastic athletics “amounts to a mere expectation rather than a constitutionally protected claim of entitlement.” Walsh v. Louisiana High Sch. Athletic Ass’n., 616 F.2d 152, 159 (5th Cir. 1980).[3] In addition, Granara’s interest in a future professional athletic career “must nevertheless be considered speculative and not of constitutional dimensions.” Colorado Seminary v. NCAA, 417 F.Supp. 885, 895 (D.Colo. 1976). Parish v. NCAA, 506 F.2d 1028, 1034 n.17 (5th Cir. 1975); Hawkins v. NCAA, 652 F.Supp. 602, 611 (C.D. Ill. 1987).
Therefore, Granara has failed to show a likelihood of success on the merits of his claim against the University. The due process claim brought by Granara does not implicate a protected liberty or property interest. Thus, Granara’s motion for a preliminary injunction, based upon the record before the court, must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for preliminary injunction be DENIED.

The court’s inquiry into the appropriateness of injunctive relief is limited to that information contained in the record including the plaintiffs complaint and the affidavits submitted in support of and in opposition to the preliminary injunction.

Whether Granara has in fact suffered irreparable harm, absent the presumption surrounding constitutional claims, is certainly open to question. Nothing in the University’s prohibitions on Granara’s activities prevents him from engaging in self-conditioning or seeking different venues to skate or practice. Under the current schedule, Granara will be denied the right to practice with the team for only twelve days at most (subject to any potential sanctions if found guilty by the hearing board). If the University’s case against Granara is as weak as alleged, he will be allowed to rejoin the team in the very near future, well in advance of the opening game on November 11, 1995.
The court also stresses that Granara is not being denied an education at UMass/Dartmouth. Rather, Granara is only prohibited from participating in those activities which fall outside of the traditional pedagogical sphere.

See, e.g., Herbert v. Ventetuolo, 638 F.2d 5 (1st Cir. 1981); Hardy v. University Interscholastic League., 730 F.2d 1233 (5th Cir. 1985); Albach v. Odle, 531 F.2d 983 (10th Cir. 1976); Davenport v. Randolph County Board of Education, 730 F.2d 1395 (11th Cir. 1984); Rutledge v. Arizona Board of Regents, 660 F.2d 1345 (9th Cir. 1981); Hamilton v. Tennessee Secondary Athletic Assn., 552 F.2d 681 (6th Cir. 1976); Gonyo v. Drake University, 837 F.Supp. 989 (S.D. Iowa 1993); Gianattasio v. Stamford Youth Hockey Ass’n., 621 F.Supp. 825 (D.Conn. 1985); Davis v. Randolph County Board of Education, 616 F.Supp. 1310 (D. Nev. 1985); Williams v. Hamilton, 497 F.Supp. 641 (D. N.H. 1980).